# ARKANSAS STATE HIGHWAY COMMISSION *v.*
## RALPH L. GEESLIN ET UX

5-4962                                446 S. W. 2d 245

Opinion delivered November 3, 1969

*Thomas B. Keys* and *Billy Pease,* for appellant.

*Felver A. Rowell, Jr.,* for appellees.

J. FRED JONES, Justice. This is an eminent domain case involving the taking by the Arkansas Highway Commission, for Interstate 40 right-of-way, a 16.72 acre strip of land running northeast and southwest across the north 80 acres of Mr. Geeslin's 440 acre tract of land in Conway County, Arkansas.

Mr. Geeslin testified that the highest and best use of his land was for livestock farming; that it was worth

$300 per acre before the taking and $200 per acre after the taking. He testified that his entire land had been damaged in the amount of $58,263 because of the taking. Mr. George Lyford testified as an expert for Mr. Geeslin. He testified that the 80 acre tract through which the right-of-way was taken was not damaged at all by the taking, but that the remainder was damaged in the amount of $39,425. Two experts testified for the Commission. Mr. Scott testified that the damage amounted to $2,750 and Mr. Hayes testified that it amounted to $1,-750. All the testimony pertaining to damages was based on the difference in the value of the land before and after the taking. The jury returned a verdict for $45,000 and although the Commission filed a motion for a new trial, the court overruled the motion and entered judgment for the amount of the verdict. The Commission has appealed and relies on the following points for reversal:

> "The trial court erred in overruling appellant's motion for change of venue.
>
> The trial court erred in not striking the value testimony of owner, Ralph L. Geeslin.
>
> The trial court erred in not striking the value testimony of expert witness George Lyford.
>
> The Court erred in overruling the appellant's motion for a new trial.
>
> The verdict is not based on substantial evidence and is excessive."

We disagree with the Commission on its first point, but we agree with it on all the others.

The Commission filed a verified motion for a change of venue but the motion was not supported by the additional affidavits required by law and it was de-

nied by the trial court. The Commission argues that the trial court abused its discretion in refusing to grant the motion and that Geeslin waived any deficiency in the lack of affidavits in support of the motion by failing to object at the trial. We do not agree with the Commission. It filed its motion under Ark. Stat. Ann. § 27-701 (Repl. 1962), the pertinent part of which is as follows:

"Any party to a civil action, trial by a jury, may obtain an order for a change of venue therein by motion upon a petition stating that he verily believes that he can not obtain a fair and impartial trial in said action in the county in which the same is pending, on account of the undue influence of his adversary, or of the undue prejudice against the petitioner or his cause of action or defense, in such county. The petition shall be signed by the party and verified as pleadings are required to be verified, and shall be supported by the affidavit of at least two [2] credible persons to the effect that the affiants believe the statements of the petition are true."

The Commission calls attention to sixteen eminent domain cases from Conway County where jury awards totaled $470,550, when the highest damages testified to by the Commission's expert witnesses totaled only $131,-550. The same argument was advanced in the case of *Ark. State Highway Comm'n v. Duff*, 246 Ark. 922, 440 S. W. 2d 563, and there we said: "Our statute requires not only that a motion or petition for change of venue be verified, but, in addition, that it be supported by the affidavit of at least two credible persons that they believe the statements of the petition are true." We pursue the Commission's first point no further, for if its argument was not answered in *Duff, supra,* it was completely answered, adversely to the Commission's contentions, in *Ark. State Highway Comm'n v. Leavell,* 246 Ark. 1049, 441 S. W. 2d 99.

In considering the other points the Commission relies on, we shall not go into the separate objections made to the testimony and exhibits. All objections except one were overruled by the trial court and the evidence was submitted to the jury for what it was worth.

The entire tract of land involved in this lawsuit consists of 440 acres. Eighty acres of the tract, one-fourth mile wide and one-half mile long, extends north from the northeast 40 of the remaining 360 acres. The remaining 360 acres lie roughly, on the map exhibit, in the form of a rectangle slightly longer east and west than it is wide north and south. Cadron Creek runs from the northeast to the southwest. It slightly cuts the southeast corner of the 80 acre tract and forms the eastern boundary line of the remaining 360 acre tract. The 80 acre tract extends north into hill land from Cadron Creek, and the remaining 360 acres extends west from Cadron Creek and is referred to as "bottom land." The right-of-way extends diagonally through the 80 acre tract leaving approximately half of the remainder of the 80 acres, roughly in the shape of a triangle, on the northeast side of the right-of-way, and the remaining half in the form of a triangle, still joining the 360 acres on the southwest side of the right-of-way.

The jury verdict was for $5,575 more than any witness, other than Mr. Geeslin, testified that the damage amounted to, so the verdict was obviously based on Mr. Geeslin's testimony. We must reverse the judgment of the trial court for two reasons. Mr. Geeslin simply submitted no substantial evidence that his land, outside of the actual taking, was damaged one-third of its original value, and there is no substantial evidence that the land was worth $300 per acre. Mr. Geeslin purchased about half of his land in 1959 for $62 per acre and the remainder in 1962 for $91 per acre. He paid $33,000 for the entire tract. There is no evidence in the record that he has made any improvements on the land or that it has increased in value since he purchased it.

The owner of land may give his opinion in evidence as to the value of his land without qualifying as an expert in land values,[1] but his opinion does not constitute substantial evidence unless based on facts that would justify his opinion.[2] A properly qualified expert's opinion, however, does constitute substantial evidence[3] unless it be shown that his expert opinion is without reasonable basis.[4]

Mr. Geeslin testified as to some flooding and inconvenient access to parts of the 80 acres across which the right-of-way runs.

"Q. You cannot get to this land in the north?

A. No, sir, you cannot get to that.

Q. What has it done to this 80 acres?

A. It has completely destroyed the value of the whole property."

And as to the remaining 360 acres, Mr. Geeslin testified, in part, as follows:

"Q. The remaining part of the 440 acres, less this 80, has it been damaged since the taking?

A. Yes, sir.

Q. Tell us how.

A. The highest and most profitable—What I

---

[1] *Ark. State Highway Comm'n* v. *Muswick Cigar and Beverage Co.*, 231 Ark. 265, 329 S. W. 2d 173.

[2] *Ark. State Highway Comm'n* v. *Darr*, 246 Ark. 201, 437 S. W. 2d 463.

[3] *Ark. State Highway Comm'n* v. *Duff*, 246 Ark. 922, 440 S. W. 2d 563.

[4] *Ark. State Highway Comm'n* v. *Johns*, 236 Ark. 585, 367 S. W. 2d 436; *Ark. State Highway Comm'n* v. *Dixon*, 246 Ark. 731, 439 S. W. 2d 912; *Ark. State Highway Comm'n* v. *Duff, supra.*

was going to use the place for, and I have gotten with the SCS people many years ago, was stock farming. That was my sole intention. Without this high land to get the cattle up out of the bottom, you know, you run a chance of running cows and them getting down in the creek and can't get back up. So, that land has been damaged.

Q. Mr. Geeslin, prior to *August* 30, (He means March) [sic], 1966, and immediately thereafter, were you familiar with the value of lands similar to yours lying along Cadron Creek?

A. Yes, sir, the only piece of property I consider of anyways near as valuable as mine, acreage or value wise, lies approximately—

Q. Go to the exhibit and show the jury where it is.

A. From my property line here it is three quarters of a mile and directly across the track, [sic] the same type land. It is bottom land, subject to more overflow than mine. Mine is approximately 5 feet higher than his.

Q. Whose is that?

A. J. W. Benefield to Garland Kazar.

Q. Do you know when that sold?

A. March 31, 1966?

Q. Have you talked to both the buyer and seller?

A. Yes, sir, both, and the figure they used was $400.00 an acre is what Mr. Kazar paid Mr. Benefield for his land.

Q. March 31, 1966?

A. Yes, sir.

Q. Based on your knowledge of the land and sales in this area, will you tell the jury what in your opinion the 440 acre tract was worth immediately before March 30, 1966, or before the highway went through?

A. I figured it was worth $300.00 an acre. I didn't consider it hill land any less valuable than the other for the reason I was going to use it as a stock farm, and it had as much value as the other, for the reason I was going to use it for that.

Q. Prior to March 30, 1966, what was the 440 acres worth?

A. $132,000.00.

Q. What, in your opinion, Mr. Geeslin, was the land worth immediately after the taking?

A. I would say it is worth $200.00, or—$200.00 an acre, or $88,000.00 after that.

Q. All right.

A. Because of the devaluation for the stock farm.

Q. Based on the taking and damages what, in your opinion, have you been damaged in dollars and cents, Mr. Geeslin, and tell us why?

A. Okay, sir. The 16.82 acres I valued at $300.00 an acre, or $5,016.00. The rest of the 80 acres— this block here—less the amount of the highway Right of Way that is not accessible, 58 acres, at $300.00 an acre, or $17,448.00, less the value that I placed on it immediately after the taking—This part I can't get to—a small tract of land, if you find somebody that would give $30.00 an acre, or a devaluation

of the 80, $15,735.00. On the remaining, I considered damaged $100.00 an acre, $36,500.00, because I can't use it for the high value of stock farming, and it is limited to strictly row cropping.

Q. What, in your opinion, was the property worth immediately after the taking?

A. Immediately after the taking the total value would be $73,736.00.

Q. Making your damage what, Mr. Geeslin, in your opinion?

A. In my opinion, I was damaged $58,263.00; and all of this I haven't covered."

Mr. Geeslin testified on cross-examination that his land is in the soil bank; that the taking of the right-of-way has damaged it for cattle grazing purposes and that it is now only fit for row crops. In arriving at the value he compared his land to a 700 acre rice and soy bean farm sold by Benefield to Kazar for $400 per acre. He compared his 80 acres through which the right-of-way was taken to some land sold by Wilcox and Bell to Hixon for less than $200 per acre. Yet he values his 80 acres of hill land, along with the rest of his land, at $300.

We conclude that the trial court erred in refusing to strike the value testimony of Mr. Geeslin because it was shown on direct as well as cross-examination, that he had no logical basis for the value of $300 per acre he placed on his land. Regardless of the value of Mr. Geeslin's land prior to the taking, he is without reasonable basis for his testimony that his land had been damaged in the amount of $100 per acre. Mr. Geeslin still has approximately half of his 80 acres in hill land connected as before to his remaining 360 acres bottom land.

It is difficult to reconcile Mr. Geeslin's testimony that his bottom land has been reduced by one-third in value by converting it from its intended use as pasture to being fit only for row cropping. The chance he would take "of running cows and them getting down in the creek and can't get back up" does not constitute substantial evidence that his 440 acres of land was damaged $100 per acre or in any other amount. He would take the same chance of overflow in planting his land to row crops as he would in running it in pasture.

Mr. Geeslin's expert witness, George Lyford, testified that 75 acres of the 80 acre tract was in the hills and that its market value before the taking, as well as after the taking, was $175 per acre. He testified that 5 acres of the 80 acre tract, as well as the remaining 360 acres, was bottom land which had a market value of $300 per acre before the taking.

"Q. What was the value before the taking?

A. The value of the whole tract before the taking was $122,625.00.

Q. How did you arrive at that value?

A. I used the price of $175.00 an acre on 75 acres of this north 80—5 acres of that north 80 included in the bottom land at $300.00 an acre, which made a total of 345 [sic] in the bottom and 75 acres in the hills."

On direct examination Mr. Lyford testified that he used comparable land sales in arriving at his evaluation, but he only testified as to two of them. One was the sale of hill land for less than $200 per acre made some six months after the taking, and the other was the Benefield sale at $400 per acre testified to by Mr. Geeslin.

As to the damage of $100 per acre to the 365 acres in bottom land, Mr. Lyford testified on direct examination as follows:

"A. We considered the highest and best use was permanent pasture, and he had 250 head of cattle there. He would have—

Q. If you had a cattle farm, if the water came up, then the cattle would have high ground to go up to?

A. No, sir.

Q. Did Mr. Geeslin have this high ground before?

A. Yes, sir.

Q. Where was it?

A. On the north side of the right-of-way."

On cross-examination Mr. Lyford testified:

"Q. Mr. Lyford, this tract Benefield to Sevier, March 31, 1966, that was for how much?

A. $290,800.00.

Q. How many acres?

A. 727 acres with no improvements.

Q. That is how much an acre?

A. $400.00 an acre.

Q. Let's talk about this a little bit. Where is this property?

A. Across the creek and about a mile north.

Q. Across the creek and north of the subject land?

A. Yes, sir.

Q. What is the topography of this land?

A. It is in the first bottom north of the ridge that runs west of Beaver Fork Lake.

Q. Is it suitable for cultivation?

A. Yes, sir.

Q. Is the land we took in this law suit suitable for cultivation?

A. The land you took? No, sir.

Q. How do you compare these sales?

A. I compared that as the whole of the property.

Q. What do they grow on the Sevier land?

A. What kind of land—

Q. This other land?

A. Rice and soy beans.

Q. Did you consider that comparable to this land that had timber and scrub underbrush?

A. No, sir. I took that into consideration in the north 80 acres."

We conclude that both on direct and cross-examination Mr. Lyford revealed that he had no sound basis for his opinion that Geeslin's land had a before value of $300 per acre and an after value of only $200. Even

if the before value of the 365 acres of bottom land was worth $300 per acre before the taking, there is no substantial evidence that it was damaged $100 per acre because of the taking. Both the owner and his expert witness testified that 75 acres of the 80 acre tract is hill land and the photograph exhibits 3 and 4 bear this out. The plat shows, and the testimony indicates, that about half of the hill land still remains on the southwest side of the right-of-way and connected to the main body of bottom land, and there is no testimony that all of the 365 acres in bottom land is ever inundated by overflow. There are no buildings or other improvements on the property which have been severed from the remainder by the right-of-way. If the 365 acres lost one-third of its value because it is subject to such overflow that would force cattle to leave it and seek refuge on the 80 acres of hill land, then certainly a 727 acre rice and bean farm, over the hill in another valley, would not be comparable to the 365 acres of such overflow land. If the two farms are comparable, then it is only reasonable that the highest and best use of both of them would be for either cattle grazing or rice and bean farming. If Mr. Geeslin is correct in his testimony that his land is now only fit for row cropping, it would appear that it is now more comparable to the rice and bean farm than it was before the taking.

This case is reversed and remanded to the trial court for a new trial.

Reversed and remanded.

FOGLEMAN and HOLT, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I do not agree that the landowner's testimony should have been stricken. The motion was to strike his entire testimony with reference to comparable sales and did not relate to other matters treated in the majority opinion.

The motion to strike was based upon the grounds that (1) the testimony did not meet the criteria set down by law with reference to market value of land and (2) there was no similarity in the comparable sales given by this witness. Nothing was said about his testimony as to difference in market value or his valuation of the land remaining after the taking. Consequently, the motion only went to the landowner's testimony about comparable sales.

At the outset, it seems to me that the majority is endeavoring to say that an owner's testimony and an expert's testimony are to be treated differently in respect to their respective bases in that the burden is on an owner to demonstrate a reasonable basis for his testimony, while the opposing party must demonstrate the lack of a reasonable basis for the opinions given by an expert. I do not so construe our cases. See, e. g., *Arkansas State Highway Commission* v. *Clark,* 247 Ark. 165, 444 S. W. 2d 702; *Arkansas State Highway Commission* v. *Stobaugh,* 247 Ark. 231, 445 S. W. 2d 511. The landowner is permitted to give value testimony because of his familiarity with the property. *Arkansas State Highway Commission* v. *Russell,* 240 Ark. 21, 398 S. W. 2d 201; *Arkansas State Highway Commission* v. *Stobaugh, supra.* The expert is permitted to do so because of his knowledge of market values. *Arkansas State Highway Commission* v. *Johns,* 236 Ark. 585, 367 S. W. 2d 436. An owner's lack of knowledge of market values goes only to the weight to be given to his testimony. *Arkansas State Highway Commission* v. *Fowler,* 240 Ark. 595, 401 S. W. 2d 1; *Arkansas State Highway Commission* v. *Drennen,* 241 Ark. 94, 406 S. W. 2d 327; *Arkansas State Highway Commission* v. *Maus,* 245 Ark. 357, 432 S. W. 2d 478. In *Arkansas State Highway Commission* v. *Darr,* 246 Ark. 204, 437 S. W. 2d 463, we only said that the testimony of the owner should be examined to determine whether he gave a satisfactory explanation for his conclusion in determining whether it is substan-

tial, not whether it should be stricken. See *Arkansas State Highway Commission* v. *Carter,* 247 Ark. 272, 445 S. W. 2d 100.

The reason given in the majority opinion for sustaining the motion to strike is that Geeslin had no logical basis for his value of $300 per acre before the taking. This seems to be on the basis that Geeslin in considering his value figure used a sale by Benefield to Kazar one day after his land was taken. According to him, that land was the only land along Cadron Creek anywhere near as valuable as his own. He described it as the same type land, but subject to more overflow than his own because of a five-foot difference in elevation. He estimated that 70 percent of the Benefield land was open for cultivation as compared to 85 percent of his own land. The Benefield land sold for $400 per acre. He considered a sale of lands by Wilcox and Bell to Hickson at a little less than $200 per acre as being comparable to his hill land. Geeslin placed an overall value of $300 per acre on his entire tract. I cannot see how the fact that the Benefield farm was cultivated in rice and soybeans, while the bottom land of Geeslin was in the soil bank, makes Geeslin's testimony subject to being stricken or insubstantial. No two tracts of land are identical. Reasonable latitude must be allowed in evaluating sales. *Arkansas State Highway Commission* v. *Clark, supra*; *Arkansas State Highway Commission* v. *Sargent,* 241 Ark. 783, 410 S. W. 2d 381. It seems to me that the owner's testimony showed sufficient similarity that we cannot declare the two tracts so dissimilar as to preclude consideration of this sale or to say that the trial court committed reversible error in denying a motion to strike the testimony.

As the sole ground for striking, appellant makes the identical argument as to the testimony of George Lyford, i. e., that the Benefield-Kazar sale is not comparable. This argument is based to a great extent upon the statement that the Benefield land had a rice allot-

ment, but the Geeslin land did not. This witness, who had been in real estate and appraisal business for twenty years and had made appraisals for many governmental and lending agencies, said that the two tracts were comparable. He valued the 365 acres of bottom land on the Geeslin tract at $300, reducing the value $100 from the Benefield sale price because of the rice allotment. I find nothing to indicate that this adjustment was not reasonable. In my opinion there was no basis for striking Lyford's testimony.

In determining that the testimony of these witnesses was not substantial, the majority seems to place its decision upon the following in addition to the alleged lack of comparability of the Benefield sale:

(1) Geeslin still has approximately half of his 80 acres in hill land connected as before to his 360 acres in bottom land.

(2) The value of $300 per acre is not substantially supported because Geeslin bought part of the land in 1959 for $62 per acre and the remainder for $91 per acre in 1962, and there is no evidence that the land has increased in value since he purchased it.

(3) There was no substantial evidence to support a reduction in value of remaining lands to the extent of $1.00 per acre.

I will treat these factors in the order listed.

(1) Geeslin's testimony is to the contrary. He stated that the entire 80-acre tract had been rendered inaccessible to the remainder by reason of a little slough running through the property to Cadron Creek. While the slough was there before the highway construction, Geeslin testified, without contradiction, that the highway department had filled in and re-routed this slough. According to him, this change, without any drainage

relief having been provided, caused water to back up and stand on his land so as to cut off that part of the remainder of the 80-acre tract south of the new highway as well as that north of it.

(2) I think undue emphasis has been placed upon the prices at which Geeslin purchased this land. We should take judicial notice that land values all over Arkansas have steadily increased during the last 30 years and that the increase has been at an accelerated rate during the past decade. An appraiser for appellant stated that land has been increasing in value, generally speaking, but very little in the hills. He increased his values over certain sales prices in preceding years. Geeslin stated that the price he paid for the land purchased in 1962 was fixed by an agreement made with the seller in 1955, but not then consummated. Geeslin stated without contradiction that the Benefield land was purchased in 1962 at $125 per acre and sold in 1966 for $400 per acre.

(3) In giving his values for the remainder after the taking Geeslin did not relate his testimony to comparable sales. He gave a plausible explanation for a change in highest and best use from a cattle operation to row cropping, in that the high land to which the cattle could have moved when water from Cadron Creek overflowed into the bottom lands had been isolated. He mentioned the fact that no drainage under the highway had been provided, so that water stood on portions of his land to an extent that timber thereon was dying. He considered that an isolated portion of the 80-acre tract was so inaccessible that finding a purchaser for it even at $30 an acre would be difficult. No inquiry was made of Lyford by appellant as to how he arrived at his "after taking" value.

It seems to me that the testimony of these witnesses was substantial enough to leave its weight and creditability to the jury. The expert witness was not required

to state how he arrived at his values. The burden was upon appellant to demonstrate that there was no reasonable basis for the value testimony of these witnesses. I submit that it did not do so. Certainly, it was not demonstrated that Lyford's testimony had no reasonable basis. I cannot help feeling that the majority has weighed the testimony.

HOLT, J., joins in this dissent.