384 So.2d 213 (1980)
AETNA LIFE & CASUALTY COMPANY, Appellant/Cross-Appellee,
v.
Douglas and Sara Ann LITTLE, Herndon, Iles & Scott Insurance Agency, and St. Paul Fire and Marine Insurance Company, Appellees,
v.
Edward P. GRENNAN, Appellee/Cross-Appellant.
AETNA LIFE & CASUALTY COMPANY, APPELLANT,
v.
EMERY TRACTOR & EQUIPMENT COMPANY, INC., Douglas and Sara Ann Little, Herndon, Iles & Scott Insurance Agency, and St. Paul Fire and Marine Insurance Company, Appellees.
Nos. 78-1785, 78-1786.
District Court of Appeal of Florida, Fourth District.
May 21, 1980.
Rehearings Denied June 30, 1980.
*214 Cecil H. Albury of Albury, Webb, Park & Glenn, West Palm Beach, for appellant.
Larry Klein, West Palm Beach, Manley P. Caldwell, Jr. of Caldwell, Pacetti, Barrow & Salisbury, Palm Beach, Maher, Overchuck & Langa, Orlando, and Phillips, Babbitt & Cook, West Palm Beach, for appellees Edward P. Grennan, Emery Tractor & Equipment Co., Inc., Douglas and Sara Ann Little.
Joseph McGuire of Parker, Johnson, Owen & McGuire, Orlando, for appellees Herndon, Iles & Scott Ins. Agency and St. Paul Fire and Marine Ins. Co.
*215 LETTS, Chief Judge.
Aetna Insurance Company appeals from a directed verdict finding coverage under an umbrella binder and also protests a jury verdict absolving its local insurance agent from any liability under the claim. We affirm the former and reverse the latter. Aetna also appeals jury findings of bad faith which we affirm. However, we reverse an award of loss of profits to a successor owner of a business allegedly destroyed by the insurance company's recalcitrance, but affirm the award for the market value of that same business. We also reverse a compensatory award to the former owner of the business destroyed.
This controversy arises out of a personal injury suit defended by Aetna, resulting in a $435,000 verdict rendered against an insured under the impression that he had a $200,000 coverage limit. After the verdict, Aetna's lawyer advised the insured to sue the local insurance agent for failing to obtain the $1,000,000 umbrella policy the insured had requested, but did not tell him of the existence of a possible cause of action against Aetna for bad faith. That same lawyer had written a letter to Aetna after the verdict telling them that in his opinion Aetna was liable to the insured under the umbrella coverage because of the actions of the agent. Thereafter, suit was filed on behalf of the insured against the agent but not against Aetna. The insured later obtained new counsel and the instant suit was thereafter brought against Aetna, based on bad faith refusal to settle, whereupon Aetna filed a third party claim against the local agent who issued the umbrella binder, allegedly without approval or permission of the insurer.
We first affirm the directed verdict finding coverage under the umbrella binder. We are aware that a verdict should be directed only when all reasonable deductions and inferences point to but one conclusion Vertommen v. Williams, 287 So.2d 116 (Fla. 4th DCA 1973). In the case now before us, the existence of coverage is the only conclusion we can reach. There is no doubt but that the general line agent informed the insured that he was covered and even wrote a letter to that effect. We concede that the agent was in outright violation of the insurance company's unfailing practice if he issued the coverage without approval. However, that is not the point. The law is clear that a general line agent has apparent authority to bind the insurer, Russell v. Eckert, 195 So.2d 617 (Fla. 2d DCA 1967) and that is exactly what he did.
We next turn our attention to the jury verdict absolving the general line agent from any liability to the insurance company. We are of the opinion that this issue should not have been presented to the jury and that a verdict should have been directed in favor of Aetna.
The evidence that the agent did not obtain the necessary approvals to issue the coverage is overwhelming. The only conceivable evidence to the contrary comes from the agent himself when he testified that:
"My file at one time told me that Aetna had reinspected and they were going to write the risk."
Included in his testimony are admissions that he had no personal knowledge of Aetna's willingness to issue the policy (nor did anyone else) and that his file, by trial time, did not contain any material indicating that Aetna would write the risk nor did he know where any such material could be found or why it had disappeared.
Such testimony does not rise to the level of evidence from which a jury could conclude that Aetna had agreed to write the policy, Vertommen v. Williams, 287 So.2d 116 (Fla. 4th DCA 1973). It does not say that Aetna did write the policy. It does not say that the Agent knew Aetna had agreed to write it; in fact, he testified that he did not personally know of any such agreement. It says only that at one time, but not now, his file reflected that Aetna would do so. Stacked against that is the overwhelming testimony from various witnesses that Aetna never agreed to write it and in fact refused to do so.
*216 The agent next argues that even if Aetna did not approve the umbrella coverage, it still cannot maintain a third party complaint because it was guilty of bad faith and therefore a joint tortfeasor not entitled to indemnity under Stuart v. Hertz Corp., 351 So.2d 703 (Fla. 1977). If the bad faith occurred before, or during the trial of the original $435,000 personal injury verdict, then we would agree with this contention. On the other hand, if the bad faith occurred after the original $435,000 verdict, then Aetna's liability for the excess over its believed $200,000 limits, would only exist because of the agent's improper issuance of the binder, and in that event, under the verdict which we now direct, Aetna should receive $235,000 from the agent.[1] The difficulty is that we are unable to determine from the verdict in what time frame and for what actions the jury considered the bad faith to have taken place. There are allegations of bad faith refusal to settle or relay offers during the trial of the original suit. There are also references to the extraordinary behavior of counsel[2] after the original verdict and the subsequent refusal of Aetna to post a bond in excess of $200,000 or acknowledge the umbrella coverage. Because of this uncertainty, we are of the opinion that Aetna is entitled to a new trial in the bad faith suit but only as to its third party claim against the local insurance agent.
We affirm the jury's second finding that Aetna acted in bad faith toward the successor corporation which purchased the business, however, the compensatory award of $386,000 must be reduced by the amount allocated to loss of profits. Testimony placed the market value of the business destroyed[3] at $250,193 and loss of profits up to trial time of $134,530. The jury verdict appears to be fairly close to an addition of the two, however, we cannot be absolutely sure. Lost profits and loss of use may be a proper item of damages if the property or business is not completely destroyed. See Hillside Van Lines, Inc. v. Matalon, 297 So.2d 848 (Fla. 3d DCA 1974). However, where the property or business is totally destroyed we hold the proper total measure of damages to be the market value on the date of the loss, Allied Van Lines, Inc. v. McKnab, 331 So.2d 319 (Fla. 2d DCA 1976).
It is argued that the question of the lost profits has not been preserved for appeal. We have examined the transcript and conclude that though the dialogue is no model of clarity, the issue was sufficiently preserved.
Accordingly, if within 30 days the successor corporation agrees to a remittitur of $134,530 subtracted from the total amount, then the judgment for the remainder shall stand approved. If the successor corporation refuses the remittitur, the judgment shall stand reversed for a new trial. See South Florida Farms Co. v. Stevenson, 84 Fla. 235, 93 So. 247 (1922).
We must also reverse the jury award to the original insured who sold the business destroyed to the successor corporation. The award was for $75,000 in compensatory damages, but examination of the record fails to reveal a sufficient basis for anywhere near this sum and no figures were advanced in closing argument to support such an amount. We conclude, therefore, that the compensatory damages awarded were impermissibly speculative and must be reversed. See Asgrow-Kilgore Co. v. Mulford Hickerson Corp., 301 So.2d 441 (Fla. 1974). We specifically do not reverse the jury's initial finding that Aetna acted in bad faith towards the original insured and reverse this portion of the verdict only for a new trial on the issue of damages.
*217 There are several other points on appeal. However, we find no others that demonstrate reversible error.
This cause is affirmed as to the directed verdict finding umbrella coverage; reversed as to the jury verdict absolving the agent; reversed and remanded for a new trial as to the issue of bad faith barring a third party complaint; affirmed as to the jury verdict finding bad faith toward the successor corporation and as to the market value of the business destroyed subject, however, to the remittitur; affirmed as to the jury's finding of bad faith toward the original insured; reversed for a new trial on the issue of compensatory damages to the original insured. All other points on appeal are affirmed.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED IN ACCORDANCE HEREWITH.
ANSTEAD and HERSEY, JJ., concur.
NOTES
[1] These figures are simplistically stated for the purposes of this opinion. We recognize that there may be receipts from the levy, interest, attorneys fees and costs etc., which we do not seek to cancel or alter by this opinion.
[2] We refer to trial counsel not of record in this appeal.
[3] This destruction came about because when Aetna appealed the original $435,000 verdict, it refused to supersede anything but the $200,000 on the policy limits. This resulted in execution on the insured's business which wiped it out.