JIM'S HOT SHOT SERVICE, INC.,
Plaintiff, Appellant and
Cross-Appellee,

v.

CONTINENTAL WESTERN INSUR-
ANCE COMPANY, Defendant, Ap-
pellee and Cross-Appellant,

and

Sun West Insurance Agency, Defendant.

Civ. No. 10577.

Supreme Court of North Dakota.

June 28, 1984.

Rauleigh D. Robinson, Bismarck, for plaintiff, appellant and cross-appellee Jim's Hot Shot Service, Inc.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendant, appellee and cross-appellant Continental Western Ins. Co.; argued by Thomas A. Mayer.

Zuger & Bucklin, Bismarck, for defendant Sun West Ins. Agency. No appearance.

ERICKSTAD, Chief Justice.

The plaintiff, Jim's Hot Shot Service, Inc. (Hot Shot) filed this action in the District Court of Burleigh County alleging that the defendants, Continental Western Insurance Company (Continental) and Sun West Insurance Agency (Sun West), negligently destroyed its delivery service business. The case was tried before a jury which determined that Hot Shot suffered total damages of $1,500,000; that Continental's negligence caused 70 percent of the damages suffered by Hot Shot; that Hot Shot's contributory negligence caused 30 percent of the damages it suffered; and that Sun West was not negligent.

On November 4, 1983, the district court entered an order granting Continental's motion for a new trial on the issue of damages but denying Continental's motion for a new trial on the issue of proximate cause. An Amended Judgment on Jury Verdict was entered on November 7, 1983, awarding Hot Shot $1,050,000 plus interest and costs against Continental. An Amended Judgment was entered on November 9, 1983, dismissing Hot Shot's action against Sun West. On November 22, 1983, the district court entered an Order Partially Vacating Judgments under which the court vacated the damage award provided under

the November 7, 1983, Amended Judgment on Jury Verdict, in accord with its November 4, 1983, order granting Continental a new trial on the issue of damages.

Hot Shot filed an appeal from the amended judgments and the order partially vacating judgments through which it has raised, in essence, the following sole issue:

(1) Whether or not the district court abused its discretion in awarding Continental a new trial on the issue of damages.

Continental filed a cross-appeal through which it has raised, in essence, the following two issues:

(1) Whether or not the trial court abused its discretion in refusing to grant Continental a new trial on the issue of proximate cause.

(2) Whether or not the trial court improperly instructed the jury on the measure of damages.

Neither party to this appeal disputes the jury determination that Continental and Hot Shot were negligent on a 70 percent/30 percent apportionment basis, respectively. Also, neither party disputes the jury determination that Sun West was not negligent, and the amended judgment dismissing Hot Shot's action against Sun West has not been appealed.

We affirm that part of the district court's orders of November 4, 1983, and of November 22, 1983, granting Continental a new trial on the issue of damages; we reverse that part of the court's orders denying Continental's request for a new trial on the issue of proximate cause; and we remand the case to the district court for a new trial on the issues of damages and proximate cause.

During 1980, Jim Mosbrucker commenced a "hot shot" or quick delivery service in the Williston Oil Basin which was subsequently incorporated as Jim's Hot Shot Service, Inc. As a prerequisite to commencing the delivery service, Mosbrucker obtained a certificate of convenience and necessity from the North Dakota Public Service Commission as well as an interstate certificate from the Interstate Commerce Commission. Mosbrucker also obtained insurance required for operating a hot shot delivery service from the Continental Western Insurance Company.

During July, 1981, Continental negligently caused a statement to be filed with the North Dakota Public Service Commission erroneously stating that Hot Shot's insurance coverage had been cancelled for nonpayment of premiums. The Public Service Commission suspended Hot Shot's certificate of authority on November 23, 1981, but approximately three weeks later the PSC reinstated the certificate upon receiving Continental's confirmation that Hot Shot did have liability insurance coverage. Prior to the reinstatement of Hot Shot's certificate the Oil Patch Hotline, a trade publication in the Williston Oil Basin, reported on December 3, 1981, that Hot Shot's certificate of authority had been suspended for lack of insurance coverage. Hot Shot ceased to operate during December, 1982. Hot Shot filed this action for damages, during September, 1982, asserting that Continental's negligent actions caused Hot Shot to lose customers thereby ultimately destroying its entire business.

On appeal, Hot Shot asserts that the district court abused its discretion in granting Continental a new trial on the issue of damages. We disagree.

■ A trial court may grant a new trial where it appears that excessive damages have been given under the influence of passion or prejudice. Rule 59(b)(5), N.D.R. Civ.P. The trial court may also grant a new trial if the evidence is insufficient to justify the verdict. Rule 59(b)(6), N.D.R. Civ.P. In *Cook v. Stenslie*, 251 N.W.2d 393 (N.D.1977), Justice Sand, writing for the majority, stated that the standard for determining what constitutes an excessive verdict varies but generally includes one or more of the following:

"[T]he amount is so unreasonable and extreme as to indicate passion or prejudice on the part of the jury; the award is so excessive as to be without support in the evidence; the jury verdict is so exces-

sive as to appear clearly arbitrary, unjust, or such as to shock the judicial conscience, 22 Am.Jur.2d *Damages* § 366." [Case cites omitted.] 251 N.W.2d at 396.

A Rule 59(b), N.D.R.Civ.P., motion for a new trial is addressed to the sound discretion of the trial court, and the trial court's decision to grant a new trial will not be disturbed on appeal unless a manifest abuse of discretion is shown. *Okken v. Okken,* 325 N.W.2d 264 (N.D.1982). In making its determination, the trial court may, within limits, weigh the evidence and judge the credibility of the witnesses to determine whether or not the verdict is against the weight of the evidence. *Okken, supra.*

Hot Shot asserted that through the negligent acts of Continental its delivery operation was destroyed. David Eckroth, a certified public accountant, testified on Hot Shot's behalf that the book value of the corporation was $77,784 but that the total value of the corporation was $514,497. Allen Wolfe, a certified public accountant testifying on Continental's behalf, stated that Hot Shot had "book value tangible assets" of $29,000. He concluded, "beyond that, I would have a very difficult time assigning value to this company." The jury verdict was far in excess of the amount of damages supportable by the testimony of the certified public accountants that testified as expert witnesses on this issue.

Jim Mosbrucker, Hot Shot's sole owner, testified with regard to Hot Shot's value for purposes of affixing damages. Mosbrucker testified that in his opinion the corporation was worth $4,500,000. Mosbrucker obtained that figure by multiplying Hot Shot's 1981 gross revenue of approximately $450,000 times a factor of 10. However, Mosbrucker conceded on cross-examination that during 1981 the corporation's taxable income, as shown on its federal tax return, was approximately $68,000 and that its net profit after taxes was approximately $58,000.

During direct examination, Mosbrucker explained the method he used for arriving at his opinion of the corporation's value:

"Q. Jim, in your complaint, you alleged that you have sustained damages to your company of three million dollars; is that right?

"A. That's right.

"Q. What makes you think so?

"A. I am sorry. I don't understand your question.

"Q. Well, how have you arrived at that figure?

"A. Well, first of all, I went and I took our annual earnings, our income, and that was well over or right at 450 thousand dollars. I took that figure. I know of some other businesses that used a figure and compounded, and what they did was by annual earnings per year times ten. That would put us to like 4½ million dollars.

So I don't think that I would have needed 4½ million dollars in 1981, so that's where I would be satisfied with seventy-five percent of that."

During cross-examination, Mosbrucker further testified:

"Q. Now, yesterday, Mr. Mosbrucker, and, I think, earlier today, you explained to us how you arrived at the value of your business; correct?

"A. Yes.

"Q. And, as I understand, that was sort of an arithmetick [arithmetic] exercise in which you took your 1981 gross revenue of approximately 450 thousand dollars and multiplied that by ten.

"A. That's right."

■ This Court has recognized that an owner may testify as to the value of his property without qualification other than the fact of ownership. *See, In Re Heart River Irrigation District,* 78 N.D. 302, 49 N.W.2d 217 (1951). However, an owner's opinion of value is insufficient to support a value determination by the factfinder if it is given without a valid basis or is based upon improper facts or analysis. *See, Rich v. Eastman Kodak Company,* 583 F.2d 435 (8th Cir.1978); *United States v. So-*

*wards,* 370 F.2d 87 (10th Cir.1966); *Hagin v. Powers,* 140 Ga.App. 300, 231 S.E.2d 780 (1976); *Arkansas State Highway Commission v. Geeslin,* 247 Ark. 537, 446 S.W.2d 245 (1969); *Ada Oil Company v. Logan,* 447 S.W.2d 205 (Tex.Civ.App.1969); *Ward v. Deck,* 419 S.W.2d 286 (Mo.Ct.App.1967); *Shelby County R–IV School District v. Herman,* 392 S.W.2d 609 (Mo.1965).

■ Mosbrucker, in effect, derived his opinion of the corporation's value by capitalizing gross revenues by a factor of ten. He did not attempt to provide a rational basis for his method of valuation, and his method is not explained or supported by the testimony of either of the certified public accountants that testified at the trial.

In concluding that the evidence was insufficient to support the jury's verdict of $1,500,000 the district court stated, "Mosbrucker's explanation of how he arrived at the value of his business demonstrated that he has no actual knowledge of its value or of a rational manner in which the value might be computed." We agree with the district court that Mosbrucker's opinion of Hot Shot's value did not constitute substantial evidence in support of the jury's damage determination. Having reviewed the entire record, we conclude that the district court did not abuse its discretion in granting Continental a new trial on the issue of damages on the ground that there was insufficient evidence to support the $1,500,000 verdict.

■ Hot Shot asserts that if there was insufficient evidence to support the damages awarded by the jury, the trial court was required to offer Hot Shot a remittitur. We disagree. Under Rule 59(b), N.D. R.Civ.P., the trial court may grant a new trial if the damages appear excessive or if there is insufficient evidence to justify the verdict or other decision. Although the court, under subsection 5 of the rule, "may" order a reduction of the verdict or condition the grant of a new trial upon a refusal to remit excess damages, it does not require the court to choose either alternative over granting a new trial without

condition. *Neibauer v. Well,* 319 N.W.2d 143 (N.D.1982).

■ On its cross-appeal, Continental asserts that the district court abused its discretion in refusing to grant a new trial on the issue of proximate cause. We agree for the reason that the issue of proximate cause, under the particular facts of this case, is so inter-related with the issue of damages that in the interest of justice the new jury on remand should be instructed to redetermine both issues.

Hot Shot introduced evidence that its customers stopped using Hot Shot's delivery service when they were informed that Hot Shot's certificate of authority had been suspended for lack of insurance. Continental introduced evidence that the proximate cause of Hot Shot's decrease in business and ultimate "destruction" was attributable to various factors such as the slowdown of oil drilling activities in the Williston Oil Basin and problems Hot Shot was experiencing in providing adequate delivery service to its customers.

■ The question of proximate cause is an element separate from a determination of negligence, and it is a question of fact for the jury to determine. *Knorr v. K-Mart Corporation,* 300 N.W.2d 47 (N.D. 1980). Under the particular facts of this case, the question as to the amount of damages for which Continental is liable to Hot Shot is inextricably interwoven with the issue of proximate cause. In determining the amount of damages, if any, for which Continental is liable to Hot Shot, the jury must determine to what extent the decline in Hot Shot's business was caused by Continental's negligent actions and to what extent, if any, the decline was caused by other factors unrelated to Continental's actions. We conclude, therefore, that in the interest of justice it is necessary on remand for the new jury to redetermine both issues of proximate cause and damages.

On its cross-appeal, Continental also asserts that the district court improperly in-

structed the jury on the measure of damages. We disagree.

With regard to the issue of damages, the trial court instructed the jury as follows:

"DAMAGES Every person who suffers detriment from the unlawful act or omission of another may recover from the person at fault a compensation therefor in money which is called damages. Detriment is a loss or harm suffered in person or property. The measure of damages for injuries caused by negligence is that amount which would reasonably, fairly, and adequately compensate a party for the loss proximately caused by or resulting from the negligence of the other party, whether such damage could have been anticipated or not. Loss of profits is an appropriate element of damage, but there can be no recovery for loss of profits if it is uncertain whether any profit involved would have been earned. The loss, in other words, must not be speculative."

"MEASURE OF DAMAGES

"In my opening instructions I discussed to some extent the measure of damages. When, as in this case, the claim is that a business was destroyed by negligence, the measure of damages is the difference in fair market value immediately before the negligence caused damage and the fair market value that remained when the business stopped, together with any losses incurred in the interim.

"If a breach of duty has proximately caused no appreciable detriment to the party affected, it is entitled to recover nominal damages.

"The fact that I give you instructions on damages or that counsel for any party may have discussed the subject is not to be taken by you as any intimation by me or as any admission by a party of its liability for the damages claimed by another party."

■ Continental asserts that the court's instruction improperly implied that the business was destroyed and thereby re-moved the determination of whether or not there was a destruction of the business from the jury. We disagree. The instruction states that there is a "claim" that a business was destroyed by negligence. The instruction does not intimate whether or not the claim is supported by the evidence.

Continental also asserts that the proper measure of damages is loss of profits caused by the defendant's negligence and that the court's instruction encourages a double recovery by allowing Hot Shot to recover diminution in market value as well as losses incurred during the period between the occurrence of the negligence and the cessation of the business. During the trial, Hot Shot attempted to prove that, although Continental's negligence ultimately destroyed the corporation, it attempted for approximately one year to continue to operate and that it did so at reduced profit levels. The court's instruction, in essence, authorized the jury, upon finding that Continental's negligence destroyed the corporation, to award Hot Shot diminution in value of the business caused by Continental's negligence as well as losses attributable to Continental that Hot Shot incurred prior to its destruction.

■ Generally, one cannot recover as damages both diminution in value of a business as well as loss of *future* profits because future profit potential is a factor utilized in calculating market value and, as such, is compensated for in the diminution of value award. *See, Gustafson v. General Motors Acceptance Corporation,* 470 F.2d 1057 (8th Cir.1973); *Albrecht v. Herald Company,* 452 F.2d 124 (8th Cir.1971). However, loss of profits prior to cessation of a damaged business is properly allowable as an element of damages in addition to an allowance for market value diminution because the interim profit losses experienced prior to liquidation of the business are not reflected or compensated for in the market value determination. *See, Albrecht, supra; Farmington Dowel Products Company v. Forster Manufacturing*

*Company,* 421 F.2d 61 (1st Cir.1970); *See also, Atlas Building Products Company v. Diamond Block & Gravel Company,* 269 F.2d 950 (10th Cir.1959).

▮ With regard to the measure of damages for a business destroyed by alleged anti-trust violations, the Federal Court of Appeals for the First Circuit stated in *Farmington, supra* :

> "The district court—correctly, we believe—confined Farmington to lost profits from 1956 to February 28, 1958, the date when Farmington went out of business, plus the 'going concern' value of Farmington on that date.... [T]his method seems an adequate basis for giving full relief to the injured plaintiff Farmington: its lost profits to the time of cessation of business and the value which the business would have had at that time but for Forster's illegal actions." 421 F.2d at 81.

As in *Farmington, supra,* the trial court in this case, properly, we believe, authorized the jury to award Hot Shot losses incurred subsequent to Continental's negligence but prior to "destruction" of the business in addition to the diminution in value of the business caused by Continental's negligence.

Continental cites *Sawyer v. Fitts,* 630 S.W.2d 872 (Tex.Ct.App.1982) and *Aetna Life & Casualty Company v. Little,* 384 So.2d 213 (Fla.Dist.Ct.App.1980), for the proposition that when a business is destroyed the measure of damages is the diminution in value of the business without an additional allowance for loss of profits. We believe that there is a distinction between the fact situation in this case and the fact situations under *Sawyer, supra,* and *Aetna, supra,* which justifies a different measure of damages in this case.

The businesses in *Sawyer, supra,* and *Aetna, supra,* were destroyed in literally a matter of minutes. In *Sawyer, supra,* a men's clothing store was destroyed when a wall collapsed causing the roof of the business to fall, burying the entire premises with "brick, mortar and beams." In *Aetna, supra,* the business ceased to operate when a personal injury judgment creditor executed on the business. Neither business in *Sawyer, supra,* or *Aetna, supra,* continued to operate subsequent to the acts that caused their destruction. In this case, unlike the situation in those cases, Hot Shot continued operations for approximately one year after the negligence had occurred which, it is alleged, ultimately destroyed the business.

▮ Under the particular facts of this case, we believe the district court correctly instructed the jury that it could award losses incurred subsequent to the negligence and prior to "destruction" of the business in addition to diminution in value. If, when viewed as a whole, the jury instructions fairly and adequately apprise the jury of the law, they will not be overturned on appeal. *South v. National Railroad Passenger Corporation,* 290 N.W.2d 819 (N.D. 1980). We conclude that the court's instructions to the jury on the measure of damages sufficiently apprised the jury of the law in that regard.

In accordance with this opinion, the court's orders of November 4, 1983, and November 22, 1983, are affirmed to the extent that they reflect a grant of a new trial on the issue of damages and are reversed to the extent that they reflect a denial of the request for a new trial on proximate cause. We remand this case to the district court for a new trial on the issues of proximate cause and damages.

SAND, GIERKE, PEDERSON and VANDE WALLE, JJ., concur.