**Mark KIPP, Plaintiff and Appellant,**

v.

**Bruce A. LIPP, and Mitch Zeeb, Defendants,**

**Jack L. Huft, Defendant and Appellee.**

**Civ. No. 920198.**

Supreme Court of North Dakota.

Jan. 22, 1993.

Maury C. Thompson of Christensen & Thompson, Bismarck, for plaintiff and appellant.

Michael Ray Hoffman, Bismarck, for defendant and appellee.

LEVINE, Justice.

Mark Kipp appeals from a judgment against him awarding damages to Bruce Lipp, Jack Huft and Mitch Zeeb (collectively, "Huft") for conversion. We affirm.

Kipp leased his Bismarck home to Huft in December 1990. The parties' lease agreement specified a month-to-month tenancy at a rate of $385 per month, requiring, in addition, that Huft pay one-half of a $200 damage deposit upon commencement of the tenancy, and pay the balance by February 15, 1991, either in cash or through the completion of miscellaneous "cleaning ... and/or painting, etc."

Huft paid the December and January rent, but did not pay the February rent. Kipp, therefore, served Huft notice to quit on February 20, 1991. Several days later, while Huft was out of town, Kipp inspected the rental property, found it very dirty and damaged and, consequently, changed its locks. Upon returning to the rental property on February 25, 1991, Huft found himself locked out, unable to access any of his personal possessions.

Huft contacted Legal Assistance of North Dakota (LAND) the next day, describing his dilemma. LAND promptly contacted Kipp, notifying him that he was without authority to lock Huft out of the rental property and should, therefore, allow Huft to reenter. Nevertheless, Kipp refused LAND's demand. LAND then contacted Kipp's attorney, described to him Kipp's wrongful conduct, and suggested that he advise Kipp accordingly. He did so, but later indicated to LAND that Kipp remained unwilling to cooperate.

In July 1991, Kipp, still in possession of Huft's personal property, commenced an action against Huft seeking the February and March 1991 rent, the $100 balance of the damage deposit, and the costs he expended cleaning and repainting the rental property after Huft's lockout. Huft answered and counterclaimed, denying liability for the March 1991 rent and for the balance of the damage deposit and seeking damages for conversion of his property and exemplary damages for Kipp's allegedly oppressive conduct.

In December 1991, the lawsuit still pending, Kipp finally permitted Huft to collect his possessions. Huft retrieved some of his property from Kipp's Mandan residence and the bulk of it from a storage shed behind Kipp's rental property in Bismarck. Huft then discovered, however, that some of his property was damaged and a great deal of it was missing. A trial on the matter was held several months later, in March 1992.

After a bench trial, the trial court found that Kipp had converted Huft's personal property and was guilty of oppression. In calculating damages, the trial court, accepting Huft's testimony regarding the respective values of his possessions, found that Huft's property was worth at least $3,935 when converted but worth only $1,375 when returned to Huft. Accordingly, the

trial court awarded Huft actual damages of $2,741. The court also awarded $5,120 for exemplary damages based on its findings that Kipp had exhibited oppressive conduct by wrongfully retaining for 280 days "everything Huft had been able to acquire," even after being advised it was unlawful to do so, and by failing to have retained Huft's possessions "in a safe and secure manner."

Huft's award was reduced, however, by the rent he owed to Kipp for the month of February 1991. But the court refused Kipp's request to also deduct from the award the March 1991 rent, the balance of the security deposit, and the cleaning and repainting costs. Huft, therefore, was awarded a total judgment of $7,449. Kipp appealed.

■ On appeal, Kipp contends that the trial court erred in failing to deduct from Huft's damage award the March rent, the balance of the security deposit, and the expenses he incurred in cleaning and painting the rental property. He argues that paragraph 25 of the lease agreement renders Huft responsible for the March 1991 rent, because it provided that Huft, if evicted due to his own breach of the lease agreement, would remain responsible for paying rent for the "full remaining term of [the] lease, or until the apartment is re-rented, whichever comes sooner." Kipp claims that he is entitled to the March rent pursuant to paragraph 25 because the rental property was in such poor condition that it could not be adequately cleaned and repaired in time to be rented to another tenant in March. Kipp also complains that Huft had ample time to clean and repair the rental property after being served with notice to quit, adding that Huft "made no effort to make arrangements to get into the house for cleaning purposes."

Kipp also maintains that he is entitled to the $100 balance of the agreed-upon damage deposit because he did not receive cash payment and because the condition of the rental property upon Huft's eviction made it clear that Huft did not satisfy the balance through miscellaneous cleaning or other maintenance. Finally, Kipp asserts

he is entitled to reimbursement from Huft for the sum he expended to clean and repair the rental property. He points to paragraph 19 of the lease agreement, which provided that Huft would reimburse Kipp "for any loss, property damage, or cost of repairs or service ... caused by negligence or improper use" by Huft.

For reasons stated by the trial court, we agree that each of Kipp's arguments lacks merit:

> "The damage deposit was required only to assure that funds would be available if Kipp could establish damage to the premises for which the tenants were responsible.
>
> "Because of the illegal lock-out, no such damages can be proven. [Huft] had no opportunity to clean or make repairs. [He] cannot be held responsible for those repairs, nor required to pay rent for the month of March, since Kipp's wrongful conduct deprived [him] of an opportunity to clean or make repairs."

We conclude that the trial court's findings of fact are not clearly erroneous. *See* NDRCivP 52(a).

■ Kipp's second contention is that the trial court erred in its valuation of Huft's property. Kipp argues, essentially, that a trial court cannot base its determination of property value solely upon a property owner's testimony. We disagree.

A trial court's determination regarding the value of real or personal property is a finding of fact subject to the clearly erroneous standard of review. *Harwood State Bank v. Charon*, 466 N.W.2d 601 (N.D. 1991); *Farmers State Bank of Leeds v. Thompson*, 372 N.W.2d 862 (N.D.1985). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *E.g., Blotske v. Leidholm*, 487 N.W.2d 607 (N.D.1992). "The owner of personal property is fully competent to testify as to the property's value." *Charon, supra* at 604. While mere ownership does not qualify one

as an expert on matters beyond the value of the property owned, *Meyer v. Hansen,* 373 N.W.2d 392 (N.D.1985), an owner's testimony, in some circumstances, is alone sufficient to support a value determination by a fact finder. *Compare Charon, supra* [testimony of owner regarding value of equipment rebutted only by testimony of current market price sufficient to support court's valuation] *with Jim's Hot Shot Service, Inc. v. Continental Western Ins. Co.,* 353 N.W.2d 279 (N.D.1984) [testimony of owner that value of corporation was derived by capitalizing gross revenue by factor of ten, without further explanation, insufficient because without rational basis and because inconsistent with evidence presented by certified public accountants]; *see also Meyer, supra; In re Heart River Irr. Dist.,* 49 N.W.2d 217 (N.D.1951).

*Charon* controls our disposition of this issue. Huft's testimony was rebutted only by the testimony of Kipp and another witness suggesting, of course, that Huft's figures were inflated. Kipp presented no other rebuttal evidence. The trial court, therefore, had nothing more than the parties' testimony upon which to base its determination of the value of Huft's possessions. Unlike *Continental Western, supra,* the property valued in this case is not a corporation, but the ordinary possessions of an individual, the valuation of which does not require "knowledge or experience beyond that gained in the ordinary affairs of life...." *In re Heart River Irr. Dist., supra* at 232. Therefore, Huft's valuation had a rational basis. *See Continental Western, supra.*

The trial court, sitting as the finder of fact and exercising its exclusive function of assessing the credibility of the witnesses and weighing conflicting evidence, chose to rely on Huft's figures; we will not substitute our judgment for that of the fact finder. *E.g., State v. Morstad,* 493 N.W.2d 645 (N.D.1992); *State v. Schill,* 406 N.W.2d 660 (N.D.1987). The values chosen by the trial court were within the range of the evidence, *Charon, supra,* and we are not left with a definite and firm conviction that those values were determined erroneously.

■ Kipp's final contention is that the trial court should not have awarded Huft exemplary damages because the evidence does not support a finding of oppression. Section 32–03–07, NDCC, authorizes the court to award exemplary damages to a litigant whose adversary is determined guilty of oppression. "Oppression," in this context, means "subjecting a person to cruel and unjust hardship in conscious disregard of [that person's] rights." *Napoleon Livestock Auction, Inc. v. Rohrich,* 406 N.W.2d 346 (N.D.1987), *quoting Richardson v. Employers Liability Assur. Corp.,* 25 Cal.App.3d 232, 102 Cal.Rptr. 547 (1972).

"The existence of oppression is a question of fact." *Charon, supra* at 604. The record shows that Kipp retained virtually all of Huft's personal property for several months, disregarding notice that his actions were unlawful and legal advice to that effect. The record does not leave us with a definite and firm conviction that the trial court's consequent award of exemplary damages was mistaken.

The judgment of the county court is affirmed.

VANDE WALLE and ERICKSTAD, C.JJ., and MESCHKE, J., concur.

Surrogate Judge RALPH J. ERICKSTAD was Chief Justice at the time this case was heard and serves as surrogate judge for this case pursuant to Section 27–17–03, NDCC.

Justice J. PHILIP JOHNSON, who was a member of the Court when this case was heard, did not participate in this decision.

Justice NEUMANN and Justice SANDSTROM, not being members of the Court when this case was heard, did not participate in this decision.