**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Kent Dennis ZIMMERMAN, Defendant and Appellant.**

**Cr. No. 940060.**

Supreme Court of North Dakota.

Nov. 16, 1994.

---

Stephen R. Dawson (argued), Asst. State's Atty., Fargo, for plaintiff and appellee.

Robert Garold Hoy (argued), West Fargo, for defendant and appellant.

LEVINE, Justice.

Kent D. Zimmerman appeals from verdicts finding him guilty of burglary and theft of property and from the sentence imposed. We affirm.

Zimmerman and Allen Dale Reule were charged with the November 11, 1992, burglary of the Stable Bar and Restaurant in Kindred and with the theft of cash from a pull tab dispensing machine inside the building. The jury found Zimmerman guilty of burglary and theft. The trial court sentenced Zimmerman to five years of imprisonment for each offense, to be served consecutively. Zimmerman appealed the verdicts and the sentence.

Zimmerman first contends that the trial court erred in denying his motion for judgment of acquittal because there was no corroboration of Reule's testimony. Reule's testimony describes his and Zimmerman's itinerary after Reule picked up Zimmerman in Mandan and drove with him to Fargo, leaving Bismarck at approximately 10 p.m. on November 10, 1992. They went from Fargo to Kindred, where they arrived at "probably 2:00, 2:30 in the morning," and burglarized a "combination bar and restaurant" and took the money out of a pull tab machine. They

then went to Enderlin and Lisbon, where they "[c]ommitted some more burglaries." From Lisbon, they "proceeded back up towards Enderlin. From there we went west some more through Litchville until we got south of Jamestown, then north up to Jamestown and back to Bismarck on the interstate." They got back to Bismarck "around 8:00 or 9:00" on the morning of November 11, 1992, and Reule left Zimmerman at Zimmerman's home in Mandan.

■ Section 29–21–14, N.D.C.C., provides:

"A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

The purpose of corroborative evidence is to show that a testifying accomplice is a reliable witness and worthy of credit. *State v. Hogie*, 454 N.W.2d 501 (N.D.1990). As used in § 29–21–14, " 'tends' indicates tendency, not certainty." *Id.* at 503. This court outlined what is required by § 29–21–14 in *State v. Haugen*, 448 N.W.2d 191, 194 (N.D.1989):

"All that is required is that the evidence, circumstantial or · otherwise, corroborate the testimony of an accomplice as to some material fact or facts, and tends to connect the defendant with the commission of the crime. It is not necessary that the corroborating evidence be sufficient, in itself, to warrant a conviction or establish a prima facie case. Furthermore, the State need not point to a single isolated fact which is sufficient corroboration, as it is the combined and cumulative weight of the evidence other than the testimony of the accomplice witness which satisfies the statute." (Citations omitted.)

■ Kevin Briggs, who lived with Zimmerman, testified upon examination by the prosecutor:

"A [Zimmerman] came home and came in the bedroom, and he had a stack of money which he said was from a burglary they did down in Lisbon. They said they were in the Fargo area, also.

\*   \*   \*   \*   \*   \*

"Q (Mr. Dawson continuing) Mr. Briggs, did [Zimmerman] indicate any other place he'd been to that night?

"A They mentioned—or he mentioned they were in Fargo and later that afternoon Allen Reule also mentioned to me that they were in Fargo and that a couple other places were done on the same night.

\*   \*   \*   \*   \*   \*

"Q Did [Zimmerman] tell you who he was with when he was in Fargo and later in Lisbon ...?

"A With Allen Reule.

\*   \*   \*   \*   \*   \*

"Q Did [Zimmerman] ever make statements to you as to where he had been that evening?

\*   \*   \*   \*   \*   \*

"A As far as before—before they left that night, I had no idea where they were going or—or anyplace that they had in mind. When they got back, from what Kent said and from what Allen said, all I know is that Lisbon—they went to Fargo and they went to Lisbon. And there were some other places in between, but I do not know where at. I have no idea where at."

Brigg's testimony placed Zimmerman with Reule in Fargo, shortly before the burglary of the Stable Bar and Restaurant in Kindred, and in Lisbon, shortly after the burglary in Kindred. That testimony is critical because it "tends to connect the defendant with the commission of the offense" and constitutes corroboration of Reule's testimony under § 29–21–14, N.D.C.C., sufficient for submission to the jury. As we explained in *State v. Haugen*, 449 N.W.2d 784, 786 (N.D.1989), "the circumstances of Haff and Haugen's being together late the night before the early-morning burglary combined with their presence together a few hours after the burglary create an inference that they were together during the intervening hours." *See also State v. Garcia*, 425 N.W.2d 918, 921 (N.D. 1988) ("Evidence that the defendant was in the company of Reyes and Longoria near the

scene of the crime immediately before and immediately after the murder occurred, at 3:15 in the morning, is sufficient corroboration tending to connect the defendant with the commission of the crime."). We conclude that the testimony of Reule, Zimmerman's accomplice, was corroborated as required by § 29–21–14, N.D.C.C., and that the trial court, therefore, did not err in denying Zimmerman's motion for judgment of acquittal.

■ Relying on Rules 401,[1] 402,[2] 403,[3] and 404(b),[4] N.D.R.Ev., Zimmerman contends that the trial court "erred in admitting irrelevant other crimes evidence which was far more prejudicial than probative." The other crimes were other burglaries and thefts allegedly committed the same night as the one in Kindred, but for which Zimmerman was not being tried in this case. With regard to Rule 401, the other crimes evidence was relevant because it helped set time references for the early morning hours of November 11, 1992. It also placed Zimmerman with Reule, and it tended to corroborate Reule's testimony. Because it was relevant under Rule 401, N.D.R.Ev., the other crimes evidence was admissible under Rule 402, N.D.R.Ev., unless inadmissible for some other reason. With regard to Rule 404(b), N.D.R.Ev., the record does not indicate that the other crimes evidence was offered or received "to prove the character of a person in order to show action in conformity therewith." The evidence was offered because of the prosecution's burden to corroborate Reule's testimony.

Zimmerman contends that the other crimes evidence should have been excluded under Rule 403, N.D.R.Ev., because its probative value was substantially outweighed by the danger of unfair prejudice. Rule 403 "vests wide discretion in the trial court to control the introduction of evidence at trial and our review is limited to determining whether that discretion was abused." *First Nat'l Bank & Trust Co. v. Brakken*, 468 N.W.2d 633, 636 (N.D.1991).

■ While Rule 403, N.D.R.Ev., gives a trial court the power to exclude relevant evidence for any of the reasons stated in the rule, that power should be sparingly exercised. *George v. Celotex Corp.*, 914 F.2d 26 (2nd Cir.1990); 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 93, p. 479 (2d ed. 1994). Generally, any doubt about the existence of unfair prejudice, confusion of issues, misleading, undue delay, or waste of time, should be resolved in favor of admitting the evidence, taking necessary precautions by way of contemporaneous instructions to the jury followed by additional admonition in the charge. 1 Jack B. Weinstein and Margaret A. Berger, *Weinstein's Evidence*, ¶ 403[01], pp. 403–11, 403–12 (1994). "The usual approach on the question of admissibility ... is ... to give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Id.*, ¶ 403[03], pp. 403–49, 403–51. The greater the degree of relevance, the greater the showing of unfair prejudice that will be required to exclude the evidence. *United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir.1982).

---

1.  " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

2.  "All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States or the State of North Dakota, by any applicable Act of Congress, by statutes of North Dakota, by these rules, or by other rules adopted by the Supreme Court of North Dakota. Evidence which is not relevant is not admissible."

3.  "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

4.  "(b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

The rule is directed to unfairly prejudicial evidence, not simply prejudicial evidence. Indeed, no verdict could be obtained without prejudicial evidence. *United States v. Noland,* 960 F.2d 1384, 1387 (8th Cir.1992). After all, "the admission of evidence is generally calculated to benefit one side to the prejudice of the other." *Bell v. City of Milwaukee,* 746 F.2d 1205, 1277 (7th Cir.1984). " 'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee Note, Rule 403, F.R.Ev. Prejudice is unfair if it is the result of something other than the relevance of the evidence. *See State v. Kringstad,* 353 N.W.2d 302, 310 (N.D.1984). Stated otherwise, any prejudice due to the probative force of evidence is not unfair prejudice. *George v. Celotex Corp., supra.*

We conclude that the other crimes evidence was probative of Zimmerman's involvement in the offense being prosecuted, helped set time references, placed Zimmerman with Reule, tended to corroborate Reule's testimony, and was not unfairly prejudicial to Zimmerman. The trial court, therefore, did not abuse its discretion in admitting other crimes evidence.

Zimmerman complains that the trial court allowed the jurors to hear the other crimes evidence "without cautioning them as to the limited purposes for which it may have been admissible." Zimmerman's trial counsel did not request a limiting instruction.[5] We do not consider issues raised for the first time on appeal. *In Interest of B.D.,* 510 N.W.2d 629 (N.D.1994). On appeal, new counsel is limited to the issues raised in the district court. *First Nat'l Bank & Trust Co. v. Jacobsen,* 431 N.W.2d 284, 287 (N.D.1988). Nor does the failure to give a limiting instruction constitute obvious error, which we may notice even though not raised below. We exercise cautiously our power to notice obvious error and only in "exceptional situations where the defendant has suffered serious injustice." *State v. Smuda,* 419

N.W.2d 166, 168 (N.D.1988). This is not such a case.

Zimmerman asserts that reversal is required because of a violation of Section 29–21–01(1), N.D.C.C., which provides:

"The jurors having been impaneled and sworn, the trial must proceed in the following order:

"1. If the information or indictment is for a felony, the clerk or state's attorney shall read it, and shall state the plea of the defendant to the jury. In all other cases this formality may be dispensed with."

Immediately before the opening statements of the attorneys, the assistant state's attorney read the information charging Zimmerman, but did not state Zimmerman's plea to the jury. Zimmerman argues that "this error must be considered fatal and Zimmerman's convictions reversed." We disagree.

In *State v. Skjonsby,* 319 N.W.2d 764 (N.D.1982), the prosecutor did not inform the jury that the defendant had pleaded not guilty to the charged crimes until after one of the witnesses had testified. This court said:

"[W]e believe the jury would have surmized that if the defendant had pled guilty the need for a trial no longer existed, and being there was a trial the defendant had actually not pled guilty. Based on the events in this case as discussed earlier, we do not believe the trial court abused its discretion in permitting the State to recite to the jury that the defendant pled not guilty to the offenses in the indictment after Drenth testified."

*Id.* at 788. In *State v. Ellvanger,* 453 N.W.2d 810 (N.D.1990), the trial court, rather than the clerk or state's attorney, read the information to the jury. The defendant contended that he did not have a fair trial because of that error. This court said: "We are not persuaded that the inadvertent reading of the information by the trial court, rather than by the clerk or state's attorney, prevented Brandon from having a fair trial." *Id.* at 815. Here, as in *Skjonsby,* the jury would have surmised from the fact that a trial was being held that Zimmerman had

---

5. Zimmerman is represented in this appeal by     new counsel.

pleaded not guilty to the charges. Furthermore, in his opening statement, Zimmerman's trial attorney informed the jury that Zimmerman had pleaded not guilty: "You know simply by virtue of the fact that Kent Zimmerman is sitting here that he's pled not guilty. He says he's not guilty of—of this crime." As in *Ellvanger,* the fact that an officer of the court other than the clerk or the state's attorney informed the jury that Zimmerman had pleaded not guilty did not deprive him of a fair trial.

[redacted] Zimmerman contends that his convictions must be reversed because the jury and the trial court communicated when he was not present. After the case was submitted to the jury, the jury sent the court a note with a question concerning the testimony about an exhibit. The trial court gave the following typed response: [6]

"The Answer to your inquiry is as follows:

"You will have to depend on your own recollections."

Section 29-22-05, N.D.C.C., says:

> "After the jurors have retired for deliberation, if they desire to be informed on a point of law arising in the cause, or to have any testimony about which they are in doubt or disagreement read to them, they, upon their request, must be conducted into the courtroom by the officer who has them in custody. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the state's attorney and the defendant or his counsel, or after they have been called."

After a case has been submitted to the jury, the statute requires that all communications with the jurors must be made in the presence of the defendant. *State v. Smuda,* 419 N.W.2d 166 (N.D.1988). Furthermore, Rule 43(a), N.D.R.Crim.P., requires that "[t]he defendant must be present ... at every stage of the trial." The trial court, therefore, erred by responding to the jury's question without the defendant being present and without calling the jury into open court.

[redacted] In *State v. Schasker,* 60 N.D. 462, 235 N.W. 345 (1931), this court held that the defendant's constitutional right under Art. I, § 13 (now Art. I, § 12), N.D. Const., to appear and defend in person and with counsel during the whole of his trial was violated when the trial court brought the jury into open court, at the jury's request, and had the court reporter read part of the testimony to the jury in the absence of the defendant and his attorney. Because the trial court's error in responding to the jury's question in the absence of the defendant is one of constitutional magnitude, we must determine whether the error was harmless beyond a reasonable doubt. *State v. Smuda, supra.* In the circumstances presented, where the trial court responded to a written question from the jury concerning the testimony about an exhibit with a written response telling the jurors to rely on their own recollections, it would be unreasonable to conclude that Zimmerman's presence or absence would have had any effect on the result. We discern no possibility of prejudice and conclude that the trial court's error was harmless beyond a reasonable doubt.

Zimmerman avers that the trial court made an inadequate record of the proceedings involved in the jury's request and the court's response, and argues that "on the deficient record available to this Court, any doubts must be resolved in favor of the Defendant." While there was considerable room for improvement of the record, the trial court's only response to the jury's question was to tell the jurors to rely on their own recollections. We discern no possibility of prejudice and our review has not left us with any doubts to resolve.

Affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

[redacted]

6. Zimmerman's counsel said in his brief: "Apparently, there were telephonic communications between the Court and both trial counsel concerning the jury's question and the Court's intended response."