Diane HENDRICKSON, Plaintiff
and Appellee,

v.

Mark HENDRICKSON, Defendant
and Appellant.

Civil No. 950331.

Supreme Court of North Dakota.

Sept. 10, 1996.

James A. Reisnour (argued), of Mackenzie & Reisnour, Jamestown, for plaintiff and appellee.

Dwight C.H. Kautzmann (argued), Bismarck, for defendant and appellant.

MESCHKE, Justice.

Mark Hendrickson appealed from a decree entered in the divorce action by Diane Hendrickson. We affirm the decree, but remand for a slight modification and a determination of attorney's fees for Diane.

Mark and Diane married and purchased a home in Jamestown in 1980. They had four children—Carinna, Anthony, Matthew, and Andrew—during the marriage. They also raised Diane's daughter, Carissa Nygard, who was five years old when they married. Throughout their marriage, Diane worked in Jamestown and Mark worked in Dickinson. Throughout the marriage, Diane and the children lived in Jamestown, while Mark lived in Dickinson during the week and spent weekends, holidays, and vacations in Jamestown.

After a trial, the divorce decree granted them a divorce, awarded custody of the children to Diane, ordered Mark to pay child support of $1,029 per month, and distributed the marital property. Mark appealed.[1]

1. *Child Custody:*

■ Mark contends the trial court abused its discretion in awarding custody of the children to Diane. As *Weber v. Weber*, 512 N.W.2d 723 (N.D.1994), explained, we treat a trial court's determinations about child custody as findings of fact that we will not disturb unless clearly erroneous.

■ The best interests and welfare of the child control a child custody decision. NDCC 14–09–06.1; *Wolf v. Wolf*, 474 N.W.2d 257 (N.D.1991). Section 14–09–06.2(1) of the North Dakota Century Code lists thirteen possible factors on the best interests and welfare of a child for a trial court to consider in deciding custody:

> For the purpose of custody, the best interests and welfare of the child is determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors

1. Mark is represented by new counsel on appeal. We do not consider issues raised for the first time on appeal, and new counsel on appeal is limited to the issues raised in the trial court. *State v. Zimmerman*, 524 N.W.2d 111 (N.D.1994).

include all of the following when applicable:

a. The love, affection, and other emotional ties existing between the parents and child.

b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

g. The mental and physical health of the parents.

h. The home, school, and community record of the child.

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j. Evidence of domestic violence. In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, this evidence creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. . . .

k. The interaction and interrelationship . . . of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. . . .

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular child custody dispute.

Mark contends that, in its memorandum decision, the trial court made no findings under factors *a* through *l*, and only two findings under factor *m:* "First, that the residential arrangements establish custody for Diane and secondly, because Mark seemed unable to develop a happy and healthy relationship with a 20 year old step-daughter that in the court's opinion 'had a contagious effect upon the father and child relationship' with half-brother and half-sister." Mark's summary greatly understates the court's analysis.

In its memorandum decision, the trial court found:

> The Court has reviewed the various elements established by our legislature in NDCC 14–09–06.2 regarding custody. Two factors particular to this case are decisive in resolving what custodial arrangement would be in the best interests and welfare of the four children of the parties.

> First, Mark and Diane effectively—even if not deliberately or knowingly—jointly decided in advance the issue of custody through the residential arrangements they voluntarily made. That is, by having two separate dwellings with Mark living in the family home in Jamestown only on weekends and holidays, the children became quite naturally attached to the family home in Jamestown. Similarly, the children have quite naturally developed a secure and warm relationship with their mother through the years. Because of the absence of Mark during the weekdays, the children's relationship with their father is somewhat more distant. As a consequence, the children have also established school and community ties in Jamestown and it would not serve any good purpose of the children to disrupt those ties merely because the parents have decided to dissolve their marriage.

> Secondly, Mark seemed unable to develop a happy and healthy relationship with his step-daughter Carissa. While the reasons

for that failure may be multiple as well as difficult to ascertain, Mark contributed substantially to the near estrangement of his relationship of Carissa through action and conduct that may fairly be described as emotional and physical abuse. Unfortunately, Mark's occasional unkind and inappropriate treatment of Carissa had a contagious effect upon the father and child relationship with his three older biological children. The youngest, Andrew, seems not yet to be infected and, because Carissa is now an adult, Andrew should probably should not suffer any ill effects of Mark's inappropriate parentage of Carissa.

The realistic result is that the children as a family group share a special feeling of security, warmth, fondness, and affection for their mother to a higher degree than that they enjoy with their father. Accordingly, the Court finds as a fact that the best interests and welfare of Carinna, Anthony, Matthew, and Andrew will be served by placing their primary care, custody, and control with Diane.

In addition to factor *m,* these findings certainly treat factors *a, b, d, e,* and *h* of NDCC 14–09–06.2(1). These findings are supported by the evidence.

■ By living apart from his family, except for weekends and holidays, Mark was unable to develop the kind of relationship with his children that would make placement of custody with him likely. Mark could not reasonably expect the trial court to find that the best interests and welfare of the children would be served by placing custody with him. We conclude that the trial court's child custody award to Diane is not clearly erroneous.

■ Mark complains that the findings of fact, conclusions of law, and order for judgment were drafted by Diane's attorney. As we explained in *Schmidkunz v. Schmidkunz,* 529 N.W.2d 857, 859 (N.D.1995): "It is of no import that the initial draft of those findings was presumably prepared by Leslie's counsel. When the court affixed its signature to

those findings they became the findings of the court."

■ Mark complains that the trial court made no finding under NDCC 14–09–06.2(1)(j) on domestic violence,[2] contending "Diane and her relatives on at least one occasion committed domestic violence against Mark." Mark relies on his own testimony:

Q. Did anything unusual happen at that visitation?

\* \* \* \* \* \*

A. When I came driving up, I pulled up to the curb and quite unusual, because Diane was there, of course, Diane's mother was there, Diane's father was there, and Diane's sister was there, Christine. And Diane and her parents were all carrying baseball bats and her sister Christine was running a video camera.

\* \* \* \* \* \*

Q. Did anything happen with the baseball bats?

A. No. I never got out of my car so nothing ever happened, although Diane's mother was over there standing on the lawn swinging that bat she had in her hands asking me if she wanted me to come over and beat on me.

Q. Are you sure you just didn't interrupt a baseball game in progress?

A. No. There was no baseball game going because I had driven by, oh, 15 minutes or so earlier and there was no activity outside the house with baseball games going on or anything like that.

\* \* \* \* \* \*

Q. And did you do anything to try and cause a confrontation at this visitation?

A. Oh, no. I definitely knew better than to ever even think about getting out of my car at that point.

When Diane's sister, Christine, was asked about Mark's testimony, Mark's own attorney objected to describing the conduct as having "threatened him":

2. NDCC 14–07.1–01(2), defines domestic violence: " 'Domestic violence' includes physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members."

Q. ... I believe also while in Dickinson Mark had described during the course of the visitation that occurred in September of '94 that you and other family members had threatened him with baseball bats.

MS. NORDSVEN: Your Honor, that mischaracterizes the testimony that was given in Dickinson, and I'm certainly going to object to that.

\* \* \* \* \* \*

MS. NORDSVEN: I specifically object to the language threatened Mark with baseball bats that time. That was not the testimony.

Christine testified: "The kids were playing baseball in the front yard and Diane went to do some stuff so she asked me to run the video camera on the kids and dog."

While more detailed findings on this one incident might have facilitated our review, we see insufficient evidence tending to credibly show "infliction of fear of imminent physical harm" or domestic violence by Diane to reverse and remand for specific findings. We are not persuaded that the trial court erred in failing to make findings on domestic violence beyond the express findings about "Mark's occasional unkind and inappropriate treatment of" his step-daughter "through action and conduct that may fairly be described as emotional and physical abuse."

■ Mark asserts a number of objections to the investigation and report completed by the guardian ad litem. As *State v. Zimmerman*, 524 N.W.2d 111 (N.D.1994), makes plain, these objections were not made to the trial court, and they cannot now be raised for the first time on appeal.

2. *Child Support:*

■ For several reasons, including the treatment of his employer's contributions to his pension plan and health insurance, Mark contends that the trial court erroneously fixed child support when it calculated his net income at $2,700 per month. An employer's contributions to an obligor's pension plan and health insurance must be included in the obligor's income for determining child support. *Shaver v. Kopp*, 545 N.W.2d 170 (N.D. 1996); *Shipley v. Shipley*, 509 N.W.2d 49

(N.D.1993). Furthermore, Mark cannot now complain about the trial court's finding, when Mark's trial counsel suggested the finding was correct in a letter to the trial court before the court signed its findings of fact, conclusions of law and order for judgment. Commenting on the proposed findings of fact in that letter, Mark's trial counsel said: "Paragraph 33 attempts to incorporate a trial exhibit into the Findings of Fact. This is not necessary. Simply in finding that Mark's net income for child support purposes is $2,700.00 per month is satisfactory."

■ Mark complains that the decree improperly requires his child support obligation be withheld from his income by his employer. The statute, however, subjects an obligor's income to withholding for child support, unless the obligor demonstrates, and the court finds, good cause not to require withholding. NDCC 14–09–09.24. Mark was in arrears in his child support payments during the pendency of the divorce, and he made no showing of good cause.

■ Mark complains that the trial court allowed him no credit for the travel expense he will incur in exercising visitation with his children. The trial court found that Mark furnished insufficient facts to determine his visitation travel expenses, and that the increased needs of the children over twelve and Diane's increased child care expenses "are such that there shall not be a deviation from the child support guidelines." From our review of this record, we are not left with a definite and firm conviction that a mistake has been made. The finding is, therefore, not clearly erroneous.

3. *Property Division:*

■ Mark contends that the trial court erred in dividing the marital property based on values not in evidence, on debts for attorney fees, and on non-existent debts. There is evidence in the record to support the challenged valuations and debts. As we said in *Kipp v. Lipp*, 495 N.W.2d 56, 59 (N.D. 1993), "[t]he values chosen by the trial court were within the range of the evidence ... and we are not left with a definite and firm

conviction that those values were determined erroneously."

The trial court required Diane to pay "$9,000.00 to Mark with interest compounded annually at the rate of 3.5% on or before December 31, 2003," secured by a short-term redemption mortgage on the Jamestown home distributed to her that is subject to an existing mortgage. Mark contends that the trial court abused its discretion in giving Diane eight years to pay the $9,000, and that the trial court erred in directing compound interest.

The law requires a divorce court to make an equitable distribution of the spouses' property. NDCC 14–05–24. "When a court grants a money judgment to achieve an equitable distribution, it 'should set the term for payment of the cash judgment for as short a period as possible without imposing a serious hardship on the party responsible to pay the judgment.'" *Heggen v. Heggen,* 541 N.W.2d 463, 465 (N.D.1996), quoting *Hanson v. Hanson,* 672 S.W.2d 274, 279 (Tex.Ct.App. 1984). Considering Diane's income of about $18,000 per year, and her expenses for maintaining a home and raising four children, we are not left with a definite and firm conviction that a mistake has been made in allowing her eight years to pay the $9,000 judgment.

The trial court set "interest compounded annually at the rate of 3.5%" on the $9,000 to be paid to Mark. The trial court explained:

That relatively low rate is chosen to approximate an anticipated rate of inflation so that Mark's share will not be eroded unduly by inflation and in recognition of the fact that Diane must first earn income and pay income tax in addition to supporting herself and the children before net funds would be available.

While Mark was not prejudiced by the compounding feature of the court's determination, NDCC 28–20–34 directs that interest on a judgment "may not be compounded in any manner or form." Therefore, in the interest of judicial economy, we instruct that the decree be modified on remand to a simple interest rate of four percent per annum for this debt. This will effectively yield nearly the same amount of interest, and it will thus efficiently accomplish the trial court's objectives.

## 4. *Attorney Fees:*

Diane has requested costs and attorney fees for this appeal. We are affirming the decree, with only a slight modification, and so we award Diane her costs under NDRAppP 39. For attorney fees under NDCC 14–05–23, as we said in *Shaver* 545 N.W.2d at 177, "we prefer that the trial court determine whether to award attorney fees because the trial court is in a better position to assess relevant factors." On remand the trial court should act on Diane's request for attorney fees.

## 5. *Conclusion:*

We affirm the decree, but we remand for the modification of the rate of interest directed in this opinion, and for the trial court to determine the amount of attorney fees Mark should pay Diane for this appeal.

VANDE WALLE, C.J., and MARING and NEUMANN, JJ., concur.

SANDSTROM, Justice, dissenting.

Because the trial court failed to make a specific finding on the issue of domestic violence by Diane Hendrickson, I would reverse and remand. Because the majority weighs evidence and makes findings which are the exclusive province of the trial court, I dissent.

As reflected in the majority opinion, evidence of domestic violence by Diane Hendrickson was before the trial court. N.D.C.C. § 14–07.1–01(2) defines domestic violence as "physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members." "Subsection (j) [of N.D.C.C. § 14–09–06.2(1) ] applies equally to men and women." *Bruner v. Hager,* 534 N.W.2d 825, 829 (N.D.1995) (Sandstrom, J., concurring in the result). Institu-

tional paternalism toward women is itself sexism and gender bias.

"Even if the violent conduct did not harm anyone, if it threatened imminent harm to someone in the household, the presumption arises, must be addressed by specific findings, and can be overcome only by clear and convincing evidence that 'the best interests of the child require [the violent] parent's participation as a custodial parent.' NDCC 14–09–06.2(1)(j). Under NDREv 301(a), 'the presumption substitutes for evidence of the existence of the fact presumed until the trier of fact finds from credible evidence that the fact presumed does not exist.'"

*Ryan v. Flemming,* 533 N.W.2d 920, 923 (N.D.1995).

"A trial court must make detailed and specific findings about the degree of family violence whenever the subject comes up in a child-custody case." *Krank v. Krank,* 529 N.W.2d 844, 850–51 (N.D.1995) (Meschke, J., concurring).

"When domestic violence is a factor in a custody decision, the court 'shall cite specific findings of fact.' NDCC § 14–09–06.2(1)(j). Rule 52(a), NDRCivP, also requires trial courts to 'find the facts specially.' Findings are especially important in cases involving domestic violence, because the presence of findings on the issue shows that the trial court did not ignore the issue in reaching its conclusion. *Helbling,* 532 N.W.2d at 653."

*Krank v. Krank,* 541 N.W.2d 714, 716 (N.D. 1996).

Recognizing the lack of an essential finding of fact by the trial court, the majority writes: "While more detailed findings on this one incident might have facilitated our review, we see insufficient evidence tending to credibly show 'infliction of fear of imminent physical harm' or domestic violence by Diane to reverse and remand for specific findings."

The majority, however, ignores that the "trial judge is the proper arbiter of credibility," *Ryan,* 533 N.W.2d at 925 (Levine, J., concurring specially), not the Supreme Court. *Buzick v. Buzick,* 542 N.W.2d 756, 758 (N.D.1996). It is the province of the fact finder "to weigh the evidence and judge the credibility of witnesses." *State v. Syring,* 524 N.W.2d 97, 98 (N.D.1994) (citing *State v. Pollack,* 462 N.W.2d 119, 121 (N.D.1990)).

"In bench trials, the credibility of witnesses and the weight to be given their testimony are both exclusively functions of the trial court. *Schmidt v. Schmidt,* 325 N.W.2d 230, 233 (N.D.1982); N.D.R.Civ.P. Rule 52(a); *see also Johnson v. Johnson,* 480 N.W.2d 433, 437–38 (N.D.1992) (recognizing trial court's ability to ascertain the demeanor and credibility of expert witness)."

*Weber v. Weber,* 512 N.W.2d 723, 727 (N.D. 1994).

"The trial judge was the trier of fact, and, as a corollary, the judge of the credibility of the witnesses. The trial judge is uniquely qualified to determine the credibility of a witness with regard to the truthfulness of the various facts to which the witness testified."

*Urlaub v. Urlaub,* 325 N.W.2d 234, 236 (N.D. 1982). "It is the trial judge's obligation to view the witnesses, weigh their credibility and determine the facts." *Wolf v. Wolf,* 474 N.W.2d 257, 260 (N.D.1991).

"Rule 52(a), N.D.R.Civ.P., states: 'In all actions tried upon the facts without a jury ... the court shall find the facts specially ...' In this instance the trial judge in his oral opinion did not make detailed findings of fact. But in *Gross v. Gross,* 287 N.W.2d 457, 460 (N.D.1979), after emphasizing the need for specific findings of fact, this court recognized that the trial judge determines the credibility of the witnesses and that '[p]resent sense impressions of that nature are not instilled by an appellate perusal of the trial transcript.'"

*Ebertz v. Ebertz,* 338 N.W.2d 651, 654 (N.D. 1983).

"[T]he dispositive aspect of this appeal is the lack of adequate attention to the statutory presumption against placing custody with a parent who has committed domestic violence." *Owan v. Owan,* 541 N.W.2d 719, 720 (N.D.1996).

Because all of the remaining issues are affected by the award of child custody, I would reverse and remand on all issues.