Filed 1/3/00 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2000 ND 1

Diane Hendrickson, Plaintiff and Appellant

v.

Mark Hendrickson, Defendant and Appellee

No. 990123

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable Ronald L. Hilden, Judge.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

Opinion of the Court by Maring, Justice.

Rodney E. Pagel, Pagel Weikum Law Firm, Norwest Bank Bldg., Suite 402, 400 East Broadway, Bismarck, N.D. 58501, for plaintiff and appellant.

William A. Herauf, Reichert & Herauf, P.C., P.O. Box K, Dickinson, N.D. 58602-8305, for defendant and appellee.

Hendrickson v. Hendrickson

No. 990123

Maring, Justice.

[¶1] Diane and Mark Hendrickson’s 1995 divorce and subsequent child custody and visitation dispute are the subject of two prior appeals to this court, 
Hendrickson v. Hendrickson
, 553 N.W.2d 215 (N.D. 1996) [
Hendrickson I
] and 
Hendrickson v. Hendrickson
, 1999 ND 37, 590 N.W.2d 220 [
Hendrickson II
].  Following this Court’s remand in 
Hendrickson II
, the trial court entered an order denying Diane’s motion for change of venue, changing custody from Diane to Mark, denying Diane visitation with the children for a period of one year, and requiring Diane to participate in counseling with a therapist of Mark’s choosing.  Diane now appeals from this order. We affirm in part, reverse in part and remand for modification of the order.

I.

[¶2] Diane and Mark Hendrickson married in 1980 and purchased a home in Jamestown.  Diane lived in Jamestown with their four children.  Mark lived and worked in Dickinson, but lived with Diane and the children on weekends, holidays and vacations.  The couple divorced in 1995.  Diane received custody of the children and Mark was granted visitation.  In the original decree, the trial court found the children were attached to their lives in Jamestown and had developed a warmer and more secure relationship with their mother than with their father, due substantially to the long-distance living arrangement.  The trial court noted, “Mark and Diane effectively--even if not deliberately or knowingly--jointly decided in advance the issue of custody through the residential arrangements they voluntarily made.”  The trial court issued a visitation schedule allowing Mark visitation two weekends per month and at Christmas.  We affirmed the child custody award in 
Hendrickson I
, concluding that it was not clearly erroneous in light of the family’s circumstances.  553 N.W.2d at 218.

[¶3] On October 1, 1997, Mark filed a motion for change of custody asserting Diane was alienating the children from him.  He filed the motion after disputes arose over visitation, which went unresolved despite the trial court’s modification of the visitation order.  Several months before Mark’s motion of October 1, the trial court appointed Karen Mueller as guardian ad litem and directed her to evaluate the Hendrickson family.  According to the report Mueller submitted, Diane believed herself completely blameless in the breakdown of her marriage and the ensuing child custody dispute.  She considered herself the children’s sole caregiver and asserted she was “unaware of any parenting skills Mark might possess.”  Diane admitted to Mueller that she hung up on Mark when he called and until he gave her $20,000 she would continue to do so.  Mueller also reported on several occasions assistance from police officers was required to complete a visitation exchange; at one exchange, Diane’s son-in-law verbally attacked Mueller, and at a second, one of the children obstinately dared her to “try to make me go.”  Mueller explained Mark’s relationship with the children had been tenuous from the beginning because of his absence from the family home, and that Diane’s alienating behavior was causing additional, harmful estrangement between Mark and the children.  In an order dated December 9, 1997, the trial court awarded custody of the children to Stutsman County and ordered the family into therapy.

[¶4] Stutsman County, however, declined to take custody of the Hendrickson children.  On February 24, 1998, the trial court issued another order, in which the court stated, “[t]his is the most outrageous case that I have seen since I began law school twenty-five years ago.”  The court also stated:

by deed and innuendo, Diane rewards the children’s rejection of their father making this perhaps the worst case of alienation syndrome in the history of the United States . . . . Her statement on the stand that she has “tried and tried” to encourage visitation is patently ridiculous.

[¶5] The court expressed a desire to send Diane to jail for her failure to comply with court orders, yet was concerned this would harm the children.  Rather, the court ordered Mark’s child support payments to be placed in escrow.  The order also stated Mark should continue to have reasonable visitation, but did not grant Mark custody because the relationship between the children and their father had been so poisoned.

[¶6] We reviewed that order upon Diane’s appeal and Mark’s cross-appeal in 
Hendrickson II
.  1999 ND 37, 590 N.W.2d 220.  We concluded the trial court erroneously ordered the child support to be placed in escrow as a sanction against Diane.  
Id.
 at  ¶¶ 10-11.  We noted as an alternative remedy, the court could find her in contempt and impose a jail sentence.  
Id.
 at ¶ 12.  As to Mark’s assertion the trial court should change custody, we explained “evidence of alienation or persistent frustration can be relevant factors” in a trial court’s assessment of whether there has been a significant change of circumstances following an initial custody determination.  
Id.
 at ¶ 13.  We then stated:

we recognize methods other than a change of custody should be used initially to remedy a parent’s misbehavior, . . . we also recognize that, after exhausting other remedies, a change in custody may be the only method to correct the damage of a particularly stubborn and defiant custodial parent.  If the alternative remedies fail, the district court should consider a change of custody.

Id.
 at ¶ 13.

[¶7] Just before the 
Hendrickson II
 appeal, Mark filed another motion to change custody on April 9, 1998, with a supporting affidavit by the guardian ad litem, Karen Mueller.  Following that motion, Diane demanded a change of judge.  The case was then reassigned to Judge Allan Schmalenberger.  Following our remand, Judge Schmalenberger informed the parties that if Mark’s pending motion for change of custody were withdrawn, he could invalidate the demand for change of judge and  reassign the case to Judge Hilden to carry out this Court’s directions in 
Hendrickson II
.  Mark withdrew the motion, and on April 5, 1999, Judge Schmalenberger reassigned the case to Judge Hilden because “he is in the best position to understand the case and to carry out the directions of the North Dakota Supreme Court.”

[¶8] On April 26, 1999, Judge Hilden issued an order, first denying Diane’s motion

for change of venue and then turning to consideration of our remand.  In its order, the court found Diane had frustrated visitation between Mark and the children and had attempted to alienate the children from their father.  The court concluded there had been a significant change of circumstances following the original child custody determination.  The court then stated:

This Court has exhausted remedies available to correct Diane Hendrickson’s misbehavior.  Diane Hendrickson has proven to be a stubborn and defiant custodial parent and the only option yet available is to change custody.  Moreover, I find that it is in the best interest of the children that custody be changed and, therefore, I grant immediate custody of the Hendrickson children to their father, Mark Hendrickson.

In addition, the trial court ordered that Diane have no visitation for one year after the custody transfer and required her to submit to counseling with a counselor chosen by Mark.  Diane appeals from this order.

II.

[¶9] Diane asserts the trial court abused its discretion when it denied her motion for a change of venue.  We disagree.  Under N.D.C.C. § 28-04-07(3), a trial court may change the place of trial “[w]hen the convenience of witnesses and the ends of justice would be promoted by the change.”  A motion for change of venue on grounds of convenience of witnesses and furtherance of the ends of justice is addressed to the sound judicial discretion of the court.  
American State Bank of Dickinson v. Hoffelt
, 236 N.W.2d 895, 898 (N.D. 1975).  The applicant must produce facts affirmatively establishing a change of venue is warranted.  
Eckman v. Stutsman County
, 1999 ND 151, ¶ 6, 598 N.W.2d 494.  The trial court’s decision will not be disturbed on appeal unless a clear abuse of discretion is shown.  
Id.
 at ¶ 7.

[¶10] Diane asserts this case is similar to 
Whitehead v. Whitehead
, in which we declared the denial of a motion for change of venue would be an abuse of discretion when both parties, their child, and all material witnesses lived outside the county where the action was then venued.  336 N.W.2d 363, 365-66 (N.D. 1983).  We conclude the procedural posture in the two cases differs substantially.  In 
Whitehead
, the motion to change venue preceded determinative evidentiary hearings.  
Id.
 at 364.  In this case, however, following the remand and reassignment to Judge Hilden, no additional evidentiary hearing was necessary for the trial court to comply with our decision in 
Hendrickson II
.  There simply are no witnesses to be inconvenienced by the location of the action.  In addition, given the tortuous history of this case and the parties’ continued conflict over their children, we believe the ends of justice will be best served by an expeditious resolution of this action.  On the facts of this case, we determine continuing the current venue will serve that end.  Thus, we conclude the trial court did not abuse its discretion in denying Diane’s motion for change of venue.

III.

[¶11] Diane contends the trial court’s decision to change custody was clearly erroneous and should be reversed.  We analyze this issue under N.D.C.C. § 14-09-

06.6, which imposes limitations on post-judgment custody modifications.  We conclude the trial court’s order was supported by the evidence.  We determine, however, the order should be modified to allow Diane supervised visitation.

A.

[¶12] Diane submits the trial court erroneously used a change of child custody as a contempt sanction.  Further, Diane asserts Mark’s withdrawal of the April 9, 1998, motion for change of custody left no such request pending, so that the trial court was without power to change custody.  Diane also contends, even if such a motion was properly before the court, it could not order the change without first holding an evidentiary hearing.  Diane misunderstands the trial court’s order and the procedural stance of the action following our remand.

[¶13] We first address Diane’s contempt argument.  The trial court’s April 26, 1999, order does not find Diane in contempt.  The order contains no indication the trial court used a change of custody as a contempt sanction.

[¶14] Second, the withdrawal of Mark’s April 9, 1998, motion for change of custody did not divest the trial court of jurisdiction to consider the custody issue on remand from this Court.  The appeal in 
Hendrickson II
 included a cross-appeal by Mark asserting the court should have granted his motion for change of custody.  Our remand encompassed that issue and allowed the trial court to reexamine its decision on child custody.  When the case returned to the trial court on remand, the issue was properly before the court.

[¶15] Third, the order appealed from in 
Hendrickson II
 was preceded by a full evidentiary hearing and submission of a guardian ad litem’s report.  Our decision in 
Hendrickson II
 clearly contemplated custody might be changed upon remand.  1999 ND 37, ¶ 13, 590 N.W.2d 220.  On this record, no additional evidentiary hearing was required under the statute.  N.D.C.C. § 14-09-06.6(4).

B.

[¶16] Diane next argues the change of custody to Mark was clearly erroneous because it was unsupported by the evidence.  We disagree.  
When a trial court entertains a motion to change custody of children of divorced spouses, the judge must determine two issues: whether or not there has been a significant change in circumstances since the original divorce decree and custody award and, if so, whether or not those changed circumstances compel or require a change in custody to foster the best interests of the child. 
Mosbrucker v. Mosbrucker
, 1997 ND 72, ¶ 6, 562 N.W.2d 390.  
See
 
also
 N.D.C.C. § 14-09-06.6(6); 
Holtz v. Holtz
, 1999 ND 105, ¶ 10, 595 N.W.2d 1 (statutory standard “essentially tracks the two-step approach previously used by this Court for deciding a change of custody case”).  The party seeking modification bears the burden of showing a change of custody is required.  
Mosbrucker
, at ¶ 6.  A trial court’s decision to modify custody is a finding of fact subject to the clearly erroneous standard of review.  
Id.
 at ¶ 5.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if it is clear to the reviewing court that a mistake has been made.  
Id.

[¶17] In the order of April 26, 1999, the trial court expressly concluded both elements required for a change of custody existed:  the circumstances significantly changed after the original child custody award and the changed circumstances required a change in custody in the best interests of the children.  Supporting these conclusions were the trial court’s findings that Diane frustrated both the original and subsequent visitation orders and attempted to alienate the children from their father.  Specifically, the court noted Diane’s removal of the children from the home at scheduled visitation times, her refusal to allow Mark to take the children for visitation, and her refusal to make visitation arrangements.  Testimony from the record supports these findings, as does the guardian ad litem’s report, which states Diane’s alienating behavior was “indicative of an unhealthy parental figure.”  Further, the court noted Diane had numerous opportunities to change her behavior and failed to do so.  

[¶18] In 
Blotske v. Leidholm
, we stated “frustration of visitation does not alone constitute a sufficient change in circumstances to warrant a change in custody,” and a court should first resort to a more rigid visitation schedule, rather than change custody.  487 N.W.2d 607, 610 (N.D. 1992).  However, we also explained visitation problems may justify a change in custody when a court finds such problems have worked against a child’s best interests.  
Id.
  In addition, in 
Hendrickson II
, we stated that, though other methods should be used initially to remedy misbehavior by a parent, “after exhausting other remedies, a change in custody may be the only method to correct the damage of a particularly stubborn and defiant custodial parent.”  1999 ND 37, ¶ 13, 590 N.W.2d 220.  Finally, we note the Legislature has expressly recognized frustration of visitation may require a change of custody.  Under N.D.C.C. § 14-09-06.6(5), a trial court may not change custody within two years after the date of entry of a custody order.  This time limit does not apply, however, if the trial court finds both that a modification is necessary to serve the best interest of the child and also that there has been a “persistent and willful denial or interference with visitation.”  N.D.C.C. § 14-09-06.6(5)(a).  The next subsection allows the trial court to modify custody before the two year period expires upon a finding that a change is necessary for the child’s best interest and that the child’s environment “may endanger the child’s physical or emotional health or impair the child’s emotional development.”  N.D.C.C. § 14-09-06.6(5)(b).  Thus the legislature considers persistent frustration of visitation and the emotional and physical endangerment of children to be in the same behavioral class and accords the same remedy.

[¶19] While the trial court did not expressly find Diane’s persistent frustration of visitation worked against the best interests of her children, we can discern the rationale for the court’s conclusion from inference and deduction, so we need not remand for the court to clarify its finding.  
Holtz
, 1999 ND 105, ¶ 18, 595 N.W.2d 1.  The trial court’s findings make it clear the children were deprived of contact with their father by Diane’s withholding visitation rights.  The right of the children to visitation is presumed to be in their best interests.  
Blotske
, 487 N.W.2d at 610
.  Thus withholding contact with a loving parent works against the best interests of the children.  The record enables us to clearly understand the trial court’s basis for its conclusion of law.  We conclude the trial court’s decision to change custody to Mark after trying other remedies was not clearly erroneous.

[¶20] In her reply brief, Diane asserts the trial court erred because it did not allow her to cross-examine the guardian ad litem regarding her report.  We do not address issues raised for the first time in a reply brief because, under Rule 28(c), N.D.R.App.P., a reply brief must be confined to new matter raised in the appellee’s brief.
(footnote: 0)  
Freidt v. Moseanko
, 484 N.W.2d 861, 863 (N.D. 1992).

C.

[¶21] Though we conclude the change of custody was proper and we sympathize with the trial court’s frustration, we do not believe Diane should be deprived of all visitation for one year.  We have stated visitation between a non-custodial parent and a child is presumed to be in the child’s best interests and that it is not merely a privilege of the non-custodial parent, but a right of the child.  
Blotske
, 487 N.W.2d at 610.  Thus, a court should only withhold visitation when it is “likely to endanger the child’s physical or emotional health.”  
Id.
  We explained this to the Hendricksons in 
Hendrickson II
, speaking to the need for visitation between Mark and the children.  1999 ND 37, ¶ 7, 590 N.W.2d 220.  We are no less committed to those principles now that the tables have turned.  Denying a non-custodial parent visitation with a child is “an onerous restriction,” such that “physical or emotional harm resulting from the visitation must be demonstrated in detail” before it is imposed.  
Johnson v. Schlotman
, 502 N.W.2d 831, 835 (N.D. 1993).  We believe continuing, supervised contact with Diane should be attempted before she is denied all visitation.  At oral argument, Mark agreed supervised visitation would be an acceptable outcome.  We, therefore, reverse that part of the trial court’s order denying Diane visitation for one year and remand for modification to allow supervised visitation.

IV.

[¶22] Diane next asserts the trial court abused its discretion when it ordered her to see a counselor of Mark’s choosing.  A trial court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination.  
Krizan v. Krizan
, 1998 ND 186, ¶ 13, 585 N.W.2d 576.  We conclude the trial court’s order was an abuse of discretion, because it left the choice of the counselor up to Mark.

[¶23] In 
Johnson
, we reviewed a trial court order requiring the parties’ children to receive counseling to deal with problems arising from visitation.  502 N.W.2d at 835-

36.  There, the trial judge considered psychological treatment necessary for the children’s welfare.  
Id.
 at 836.  By approving of this order, we confirmed the trial court’s authority to order a child to receive counseling if it is in a child’s best interests.  We determine the trial court may order counseling for a child’s parent as well if it is in the child’s best interests.  This is especially important in the context of parental alienation because an alienating parent’s unhealthy behavior, left untreated, may continue to impede a child’s development of an emotional attachment to the other parent.

[¶24] In this case, we conclude the trial court correctly determined Diane’s behavior merited counseling.  We also agree Diane’s continual defiance of court orders suggests she should not be allowed to choose her own counselor, for fear she will frustrate the court’s goals.  We do not agree, however, the situation will be best served by allowing Diane’s ex-husband to choose her counselor.  We, therefore, direct the trial court to obtain from both parties a list of qualified counselors.  The trial court should then choose Diane’s counselor from among those named.

V.

[¶25] This Court recognizes the difficulty divorced spouses encounter when trying to resolve post-marital disputes regarding their children.  We wish to emphasize, however, divorced parents may not use their children as pawns in their battles.  Children benefit from healthy relationships with both parents; divorced parents must seek to facilitate such bonds.  When a custodial parent deprives a child of the right to have contact with the non-custodial parent, the custodial parent may lose custody.  We, therefore, affirm the trial court’s order changing custody to Mark and denying Diane’s motion for a change of venue.  We reverse and remand for a modification of the order to allow Diane supervised visitation and for the trial court to choose Diane’s counselor.

[¶26] Mary Muehlen Maring

William A. Neumann

Dale V. Sandstrom

William W. McLees, D.J.

Gerald W. VandeWalle, C.J.

[¶27] William W. McLees, D.J., sitting in place of Kapsner, J., disqualified.

FOOTNOTES
0:     
  We recently considered a party’s right to cross-examine an investigator in an evidentiary hearing on a motion to change custody.  
Quarne v. Quarne
 1999 ND 188, 601 N.W.2d 256.  In 
Quarne
, we held it was reversible error for a trial court, when making a custody decision, to rely on facts in an investigator’s report without allowing the party to call and cross-examine the investigator.  
Id.
 at ¶ 6.  Our refusal to consider the issue for procedural reasons in this case does not undermine our commitment to that holding.